**UNITED STATES of America**

v.

**Calvin L. LEE.**

**Crim. No. 74–39.**

United States District Court,
W. D. Pennsylvania.

March 26, 1974.

Blair A. Griffith, First Asst. U. S. Atty., Pittsburgh, Pa., for the U. S.

J. Kerrington Lewis, Pittsburgh, Pa., for defendant.

## OPINION AND ORDER

MARSH, Chief Judge.

Defendant, Calvin L. Lee, charged in a two-count indictment with possessing a firearm which had not been registered to him in the National Firearms and Transfer Record in violation of 26 U.S. C. § 5861(d), and possessing a firearm after being convicted of a felony in violation of 18 U.S.C. (Appendix) § 1202(a)(1), has moved to suppress evidence seized from him when he was searched on November 1, 1973, by Chief of Police John Palumbo of the Wilmerding Police Department. An evidentiary hearing has been held, and, in my opinion, the motion should be denied.

At approximately 9:15 o'clock a. m. on November 1, 1973, Paul C. Franklin, manager of the Mellon National Bank in Wilmerding, observed two men acting in a suspicious manner in an alley a short distance (75 feet) from the bank shortly after it had opened. For a period of five minutes Mr. Franklin observed the spot where he saw the men standing. They appeared to observe the bank for short periods and then duck behind the corner of a building housing Berkmen's Food Market. This action was repeated three times during the five minute period of Franklin's observation. The men were dressed in fatigue jackets, wore ski caps, and one of them carried a shopping bag with handles.

November 1, 1973 was payday at the Westinghouse Airbrake Plant located about 500 yards from the Mellon Bank. On such days the bank would cash between $300,000 and $400,000 in payroll checks, and it was customary for couriers to travel between the bank and the plant to cash checks for the employees; some of these couriers cashed between 40 and 50 payroll checks. From where the two men were stationed they could observe customers traveling between the Westinghouse plant and the bank.

At approximately 9:20 o'clock a. m., Mr. Franklin called the Wilmerding Police Station, identified himself, described the men to Chief of Police John Palumbo, and told him they were dressed in fatigue jackets and ski caps, and that they were "bobbing their heads in and out" from behind a building a short distance from the bank and acting suspiciously. When Mr. Franklin looked out the window again, he could no longer see the men so he sent the Assistant Manager, Jack Stevenson, outside to assist the police in locating the men.

Upon receiving Mr. Franklin's call, Chief Palumbo, unaccompanied, went to his police cruiser, which was equipped with a dome light and identifiable as a police vehicle, and drove to the bank, a distance of four blocks. As he approached the bank he saw the Assistant Manager pointing down an alley; he pulled his cruiser into the alley and saw two black men matching the description

given to him by Mr. Franklin a short distance from the corner. Chief Palumbo stopped his car and got out. One of the men looked at Chief Palumbo and immediately ran around a corner, up another street, and out of sight. Chief Palumbo went up to the remaining man, the defendant in this case, grabbed him by the arm and said, "I want to talk to you". The Chief then put the defendant in the back seat of the cruiser so he would not run away. There were no door handles on the inside of the back seat of the cruiser. The Chief got back into the driver's seat intending to pursue the man who had fled. As the cruiser began to move down the alley, Chief Palumbo observed the defendant in the rear-view mirror unzipping his jacket as if to get something out from under it. Chief Palumbo immediately stopped the cruiser, removed the defendant from the back seat, searched him, and discovered a sawed-off shotgun concealed under his jacket.

■ We believe that the limited detention and search of the defendant, based upon the facts developed at the evidentiary hearing which were known to Chief Palumbo, was wholly reasonable under the circumstances. Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L. Ed.2d 612 (1972); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

The deliberately furtive actions of the defendant and his companion as related to Chief Palumbo by the bank's manager, combined with the flight of the defendant's companion at the approach of a police officer, were factors which justified the Chief in stopping the defendant to establish his identity and question him as to his conduct. *Cf.* Sibron v. New York, 392 U.S. 40, 66–67, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). Clearly, under the circumstances for the Chief to have ignored the defendant without so much as attempting to question him and further investigate his conduct, would have been unreasonable.

That the Chief grabbed the defendant by the arm, stated "I want to talk to you", and placed him in the police car, all apparently without protest, was, we believe, reasonable police conduct under the circumstances and reasonably calculated to maintain the status quo between the Chief and the suspects pending further developments and investigation. Obviously, the Chief had a duty to attempt to apprehend and question the defendant's companion, who had fled at his approach, without letting the defendant, who was also acting suspiciously, remain at large. The Chief was alone and confronted by two individuals whose conduct gave rise to a well-founded suspicion that they were contemplating a daylight robbery of either the bank itself or a courier, the obvious exigencies of this situation authorized the Chief by a show of authority and limited physical force to temporarily seize the defendant and restrain his freedom of movement by placing him in the back seat of the cruiser until the situation stabilized and he could determine if a full custodial arrest and further detention were necessary. We believe the seizure of the defendant and temporarily placing him in the back of the police cruiser was a legitimate option available to Chief Palumbo and was appropriate action for him to take under the circumstances. Terry v. Ohio, supra, 392 U.S. pp. 20–27, 88 S.Ct. 1868.

■ Finally, the Chief had the right to seize and conduct a limited search of the defendant immediately upon apprehending him, and, we believe, this right continued to exist, at least while the Chief was in active pursuit of defendant's companion or while other exigent circumstances made an immediate search impossible. Surely, when the Chief observed the defendant actually going for something concealed under his jacket, he was justified in concluding that he was dealing with someone who was presently armed and dangerous, and could conduct a limited search of the defendant for offensive weapons. We believe that the search conducted in this case was fully justified under the facts as they were known by Chief Palumbo and he acted

reasonably under the circumstances. *Cf.* United States v. Owens, 472 F.2d 780 (8th Cir. 1973); United States v. Ragsdale, 470 F.2d 24 (5th Cir. 1972); United States v. Edwards, 469 F.2d 1362 (5th Cir. 1972).

The defendant's motion will be denied. An appropriate order will be entered.