[No. 12007-7-I. Division One. January 9, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. PATRICK
RALPH SWEET, *Appellant.*

*Greg Boos* (appointed counsel for appeal), *Patrick Ralph Sweet,* pro se, and *Raymond H. Thoenig* of *Washington Appellate Defender Association,* for appellant.

*David S. McEachran, Prosecuting Attorney,* and *Mac D. Setter, Deputy,* for respondent.

WILLIAMS, J.—After a trial to the court, sitting with a jury, Patrick Ralph Sweet was found guilty of rape in the first degree, burglary in the first degree, and two counts of

unlawful possession of a firearm. Judgment was entered on the verdicts and Sweet was sentenced to life in prison for the rape, life in prison for the burglary, and 10 years in prison for the first weapon charge, all sentences to be served consecutively. Sweet was also sentenced to a concurrent 10–year term on the second weapon charge. He appeals, we affirm.

At 9:15 p.m. on April 16, 1982, Lynden Police Officers Oppewall and Clark received a call concerning a suspicious 1969 Dodge pickup truck. About 11:20 p.m., they found it parked and unoccupied in front of a closed business in a mixed business and residential neighborhood. After checking it they saw a man standing in the shadows with his back against a building about three–fourths of a block away.

The officers drove toward the man who immediately fled at a full run with Officer Oppewall yelling "Halt! Police!". The man continued to run but was apprehended soon thereafter. Upon being caught, the man, wearing cotton work gloves and with a nylon stocking sticking out of a pocket of his brown leather jacket, dropped a red ski mask. When he was frisked for weapons, a blue watch cap, a flashlight and a folding knife were found. He identified himself as Patrick Sweet.

Suspecting Sweet of criminal activity and not wanting him to flee again, Officer Oppewall ordered Sweet into the patrol car. Sweet complied. Oppewall then informed Sweet of his *Miranda* rights, which Sweet acknowledged, and then asked, "What's going on?" Sweet replied that he was a "pointman," that two other people were involved, that he was just the lookout, and that he ran from the officers because he was scared. Questioning of Sweet was interrupted by a police radio broadcast of a hostage situation one block away.

According to the broadcast, a young girl was being held hostage by her father in his estranged wife's home. The officers took Sweet, handcuffed, with them to the new crime scene where they focused their attention exclusively on the

hostage situation. After a short time, a 13–year–old girl emerged from the house and told the officers that an intruder (not her father) clad in a brown leather jacket and wearing a red ski mask had broken into her house and raped her. The officers immediately realized that the description matched Sweet and returned to the car to place him under arrest.

When the officers reached Sweet he appeared unconscious. Because of his condition, Sweet was taken to a nearby hospital where he was treated for approximately 30 minutes and then released in apparent good health. Sweet was then taken to jail and questioned about the rape.

Meanwhile, Sweet's truck (the suspicious Dodge pickup) was impounded. During an inventory of the vehicle, an automatic handgun was found.

The first question is whether the trial court erred by denying Sweet's motion to suppress evidence gained during his initial detention.

Although the brief detention and questioning of a suspect constitutes a "seizure," within the meaning of the Fourth Amendment, *Brown v. Texas,* 443 U.S. 47, 61 L. Ed. 2d 357, 99 S. Ct. 2637 (1979), a police officer may stop and briefly detain a person for investigative purposes on less than probable cause. *State v. Gluck,* 83 Wn.2d 424, 518 P.2d 703 (1974).

> Although probable cause is lacking, police may briefly detain and question an individual if they have a well founded suspicion based on objective facts that he is connected to actual or *potential* criminal activity.

(Italics ours.) *State v. Sieler,* 95 Wn.2d 43, 46, 621 P.2d 1272 (1980).

Prior to physically detaining Sweet, the officers knew these facts: (1) Sweet appeared to be connected with a "suspicious" vehicle; (2) the vehicle was parked outside a business which had been closed for many hours; (3) Sweet was standing with his back against a building (apparently hiding) when first noticed; (4) the area where Sweet was standing was not frequently traveled at 11:20 p.m.; (5)

Sweet fled at a full run when the officers began to approach him in their car; (6) after a chase, Officer Clark contemporaneously stopped Sweet and observed him to be wearing gloves and holding a stocking mask; (7) it was a mild spring evening. The officers had a well founded suspicion that Sweet was connected to potential criminal activity and, thus, were entitled to stop and question him. *State v. Gluck, supra.*[1]

The next question is whether the trial court erred by refusing to rule that the officers' transportation of Sweet to the scene of an apparently unrelated crime constituted an illegal arrest requiring the suppression of evidence. Arguing that the police may not "seek to verify their suspicions by means that approach the conditions of arrest", *Florida v. Royer,* 460 U.S. 491, 499, 75 L. Ed. 2d 229, 103 S. Ct. 1319 (1983), Sweet contends that the circumstances of his continued detention constituted an arrest effected without probable cause.

We need not decide whether Sweet was, as a matter of law, under arrest at the time he was transported to the site of the hostage situation because this action did not result in the police acquiring any evidence against him. Only evidence gained from illegal activity must be suppressed. *Wong Sun v. United States,* 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963); *McNear v. Rhay,* 65 Wn.2d 530, 398 P.2d 732 (1965). Before arresting Sweet, the officers, during the course of the initial, lawful detention, came to know his name and his description. Upon emerging from the house, the rape victim immediately described her assailant to the police. She was unaware that Sweet was in the patrol car. Her description was not the "fruit" of Sweet's continued detention, nor was the officers' realization that she was describing Sweet a "fruit" of the deten-

---

[1]Because the officers were entitled to stop and question Sweet, any information gained by them during this initial stop was properly admissible at trial. This information included: (1) Sweet's true name; (2) the fact that Sweet was armed with a knife and carried a flashlight, a nylon stocking, and a red ski mask; and (3) that Sweet was dressed in a brown leather jacket and had a watch cap.

tion. Because there was no evidence to suppress, there can be no error.

The next question is whether Sweet was adequately advised of his *Miranda* rights prior to making several inculpatory statements in the jail on the night of his arrest. Sweet contends that because of the medical difficulty he encountered at the site of the offense, he should have been informed of his rights a second time prior to any questioning.

There is no doubt that Sweet was aware of his rights after being informed of them by Officer Oppewall when he was initially stopped. It is not necessary to give an advisement of constitutional rights prior to each in–custody statement once a suspect has been adequately and effectively warned. *State v. Gilcrist,* 91 Wn.2d 603, 590 P.2d 809 (1979). Nor does the fact of a possible medical condition, in and of itself, vitiate the validity of the initial advisement or the voluntariness of the initial waiver. *State v. Lawley,* 32 Wn. App. 337, 647 P.2d 530 (1982); *State v. Hoyt,* 29 Wn. App. 372, 628 P.2d 515 (1981). The record supports the trial court's finding that Sweet was at all times aware of and knowingly waived his *Miranda* rights. There is no error.

The next question is whether the police had proper grounds to search Sweet's truck, Sweet contending that the search conducted, which produced a firearm, was unlawful.

Pursuant to their "community caretaking function," police may impound a vehicle when no reasonable alternative exists. *State v. Houser,* 95 Wn.2d 143, 622 P.2d 1218 (1980); *State v. Montague,* 73 Wn.2d 381, 438 P.2d 571 (1968). The officers in this case were faced with these facts: (1) Sweet was under arrest for two class A felonies and was thus unlikely to return and pick up his truck in the near future; (2) Sweet was either unconscious or feigning unconsciousness, was unable to make arrangements for safekeeping of the truck, and was to be sent to the hospital; and (3) the truck was parked in front of a private business with no prospect of it being moved in the near future. As a matter

of public convenience, the officers properly impounded the vehicle. *Houser.* The trial court properly denied Sweet's motion to suppress the firearm.

The next question is whether the burglary and rape charges merge, Sweet alleging that punishing him for each places him in double jeopardy in violation of the fifth amendment to the United States Constitution.

 The offenses do not merge. RCW 9A.52.050 provides:

> Every person who, in the commission of a burglary shall commit any other crime, may be punished therefor as well as for the burglary, and may be prosecuted for each crime separately.

RCW 9A.52.050 is a clear declaration of legislative intent. As the United States Supreme Court recently stated:

> Where, as here, a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the "same" conduct . . . the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.

*Missouri v. Hunter,* 459 U.S. 359, 368–69, 74 L. Ed. 2d 535, 103 S. Ct. 673 (1983). *Accord, State v. Hunter,* 35 Wn. App. 708, 717, 669 P.2d 489 (1983). There was no error.

The next question is whether the trial court's imposition of consecutive life sentences upon Sweet constitutes cruel and unusual punishment. Sweet contends that because of his age the sentences have the effect of sentencing him to prison for life without the possibility of parole and that this is unconstitutionally harsh. We disagree.

 A punishment is cruel and unusual only if it is clearly arbitrary and shocking to the sense of justice. *State v. Smith,* 93 Wn.2d 329, 345, 610 P.2d 869, *cert. denied,* 449 U.S. 873 (1980). An appellate court may not invalidate a sentence merely because a less severe penalty might adequately serve the ends of public policy. *Smith,* at 341.

Sweet's criminal background was substantial. In this case, he raped a 13–year–old girl in her home after threat-

ening her with a knife. The penalties imposed, although severe, are not unconstitutional. *Smith.*

In his supplemental brief, Sweet alleges that the trial court commented on the evidence in violation of article 4, section 16 of the state constitution.[2] The comments at issue were made during the direct examination of the rape victim and the cross examination of the physician who examined her after the assault. In both instances, the comments about which Sweet complains were prompted by questions concerning Sweet's penetration of the young girl. It is apparent from the record that, in the first instance, the trial court was understandably attempting to make the ordeal of testifying about the rape as comfortable as possible. In the second instance, the trial court was obviously attempting to expedite proceedings by focusing counsel's examination on facts at issue. Sweet's defense was denial. He did not contest that the young girl was raped but, rather, denied that it was he who committed the act. Accordingly there was no error.

In his pro se supplemental brief, Sweet presents additional claims of error.

Sweet first contends that the evidence presented at trial was legally insufficient because the State did not prove that he acted alone in raping the young girl.

■ Whether Sweet acted alone or in consort is not an element of any of the crimes charged. Viewing the evidence presented at trial in the light most favorable to the State, and giving the State the benefit of reasonable inferences therefrom, any rational trier of fact could have found all of the elements of all of the crimes alleged proved beyond a reasonable doubt. *State v. Green,* 94 Wn.2d 216, 616 P.2d 628 (1980); *State v. Gear,* 30 Wn. App. 307, 633 P.2d 930 (1981).

■ Sweet next contends that he received ineffective assistance of counsel at the pretrial, trial and sentencing

---

[2] "Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." Const. art. 4, § 16.

stages of this proceeding. The test for determining the validity of Sweet's claim is if, after considering the entire record, can it be said that the accused was afforded an effective representation and a fair and impartial trial? *State v. Myers,* 86 Wn.2d 419, 545 P.2d 538 (1976). We have reviewed the record and conclude that Sweet's claim is frivolous.

The remaining claims of error presented in Sweet's pro se supplemental brief are either encompassed in our foregoing rulings, request us to retry factual issues which we cannot do, *State v. Snider,* 70 Wn.2d 326, 327, 422 P.2d 816 (1967), are cognizable only by way of a personal restraint petition, *State v. Bugai,* 30 Wn. App. 156, 632 P.2d 917 (1981), or are otherwise patently without merit. *State v. Mercer,* 34 Wn. App. 654, 662, 663 P.2d 857, *review denied,* 100 Wn.2d 1005 (1983).

Affirmed.

SWANSON and CALLOW, JJ., concur.

Remanded by Supreme Court to the Court of Appeals September 7, 1984.