[No. 23557-5-I.   Division One.   August 20, 1990.]

THE STATE OF WASHINGTON, *Respondent*, v. KENNETH S. WHITAKER, *Appellant*.

*Rita Griffith* of *Washington Appellate Defender Association*, for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Jeanette Dalton, Deputy,* for respondent.

WEBSTER, J.—Kenneth S. Whitaker appeals his conviction of possession of a controlled substance arguing that evidence was unlawfully obtained from him. We affirm.

FACTS

Two officers of the Seattle Police Department knew Whitaker from encountering him and other members of his gang which had claimed the Garfield Park area, Seattle, as their territory. The officers regularly patrolled this park because of a high incidence of gang violence occurring in and around it. At times, two or three shootings per night were taking place; the police received "constant reports of shots fired." By simply walking through the park, the officers would uncover weapons (handguns, sawed–off shotguns, knives, bats, clubs) stashed in places such as garbage cans and bushes near where Whitaker and his gang would "hang out". The police would regularly talk to Whitaker to gather intelligence concerning gang activities because he was known to the police as the leader of the gang that had claimed Garfield Park as its territory. Nearly every time the police officers encountered Whitaker, they patted him down for weapons but found none on his person.

On June 26, 1988, at about 12:30 a.m., the two police officers patrolled the park in a marked police car, in uniform. After spotting several people at a picnic table, the officers exited the patrol car and walked toward the group. One of the officers carried a flashlight and could identify Whitaker standing among his companions. When the officers neared, Whitaker dropped a red plastic bottle on the ground. One of the officers confiscated the bottle and found it contained rock cocaine. The officers arrested Whitaker and retrieved more cocaine from his pocket.

The State charged Whitaker on August 22, 1988, with possession of cocaine. On November 7, 1988, Whitaker moved to suppress the evidence seized from him. Whitaker claimed that he discarded the cocaine when he saw the police approaching and looking at him because he expected them to frisk him as they had done in the past. He further felt that had he attempted to leave, the police officers would have stopped and searched him. The court found that although Whitaker reasonably believed that he would have been detained and searched when he saw the officers

approaching, Whitaker abandoned the drugs such that the police lawfully retrieved them from the ground. The court denied his motion and convicted Whitaker as charged.

## DISCUSSION

■ Generally, the police may retrieve voluntarily abandoned property without violating Fourth Amendment rights. *State v. Serrano,* 14 Wn. App. 462, 464, 470, 544 P.2d 101 (1975); *see also State v. Swaite,* 33 Wn. App. 477, 485 n.5, 656 P.2d 520 (1982); *State v. Tidwell,* 23 Wn. App. 506, 508, 597 P.2d 434 (1979). Whitaker argues that he involuntarily abandoned the cocaine due to illegal police conduct. Courts of other jurisdictions have announced a rule that if a suspect discards property in response to illegal police conduct, the police may not retrieve the property without invading a suspect's Fourth Amendment rights. *See, e.g., United States v. Tolbert,* 692 F.2d 1041, 1045 (6th Cir. 1982) (suspect's disclaimer of ownership of property deemed involuntary when done in response to unconstitutional seizure or arrest), *cert. denied,* 464 U.S. 933 (1983); *Fletcher v. Wainwright,* 399 F.2d 62 (5th Cir. 1968) (involuntary abandonment occurred when illegal entry into motel room prompted occupants to jettison stolen jewelry out window). Involuntary abandonment requires (1) unlawful police conduct and (2) a causal nexus between the unlawful conduct and the abandonment. *See United States v. Roman,* 849 F.2d 920, 923 (5th Cir. 1988).

Whitaker argues that the police officers engaged in unlawful conduct prior to his abandonment of the cocaine. Specifically, Whitaker maintains that when the officers drove into the park and walked toward him, they illegally seized him. This argument is without merit.

■■ When analyzing if a seizure has occurred, "[t]he essential inquiry is whether, under the circumstances, a reasonable person would believe he was not free to leave." *State v. Machado,* 54 Wn. App. 771, 775, 775 P.2d 997 (1989) (citing *Immigration & Naturalization Serv. v. Delgado,* 466 U.S. 210, 216, 80 L. Ed. 2d 247, 104 S. Ct. 1758

(1984); *United States v. Mendenhall,* 446 U.S. 544, 554, 64 L. Ed. 2d 497, 100 S. Ct. 1870 (1980)), *review denied,* 114 Wn.2d 1009 (1990). In deciding what constitutes a seizure, we have consistently required more intrusive police conduct than the simple act of an officer walking toward a suspect in a park: *see, e.g., State v. DeArman,* 54 Wn. App. 621, 624, 774 P.2d 1247 (1989) (seizure occurs when police pull behind another vehicle and activate emergency lights); *State v. Ellwood,* 52 Wn. App. 70, 73, 757 P.2d 547 (1988) (seizure occurs when police tell suspect, "'[w]ait right here'"); *State v. Sweet,* 44 Wn. App. 226, 230, 721 P.2d 560 (seizure occurs when officer calls out, "'Halt! Police!'"), *review denied,* 107 Wn.2d 1001 (1986); *see also State v. Stroud,* 30 Wn. App. 392, 634 P.2d 316 (1981), *review denied,* 96 Wn.2d 1025 (1982). It is well settled that a mere request for information does not constitute a seizure. *State v. Machado,* 54 Wn. App. at 775; *Ellwood,* 52 Wn. App. at 73; *see also State v. Aranguren,* 42 Wn. App. 452, 455–56, 711 P.2d 1096 (1985) (no seizure where officer signaled suspects on bikes saying, "'can I talk to you guys for a minute'"). "Whether a reasonable person would believe he was detained depends on the particular, objective facts surrounding the encounter." *Ellwood,* 52 Wn. App. at 73 (citing *Mendenhall,* 446 U.S. at 554). Contrary to Whitaker's position, this "reasonable person" standard does not depend upon the subjective perceptions of the suspect. 3 W. LaFave, *Search and Seizure* § 9.2(h), at 407 (2d ed. 1987).

Whitaker dropped the container of cocaine when the police officers were several feet away from him. They had not yet said a word to him nor had they made any gestures, such as hand movements or drawing weapons. Whitaker believes that because he was seized by the same officers in previous, identical situations, any reasonable person in his position would feel restricted from leaving.

We conclude that Whitaker's past experiences are entirely different from the present situation. His argument necessarily presupposes that his previous encounters

involved illegal police action. However, Whitaker failed to demonstrate that these encounters were not based on reasonable suspicion. Whitaker elicited testimony that the police had stopped and frisked him numerous times, but the evidence failed to establish that the police acted unlawfully. On cross examination, defense counsel failed to ask questions to elicit—to give them a chance to explain— what suspicious facts were known to the officers each time they performed these "illegal stops". Little evidence suggested that the officers had not observed suspicious activity in the past which would justify an investigative stop. The opposite seems more likely true: the officers would walk through the park and find weapons stashed near Whitaker and his gang, or the officers would investigate the park in response to a call of gunshots being fired. In any case, the police would approach Whitaker, the leader of the gang *that occupied the park territory,* and briefly perform an investigative stop to satisfy their suspicions and perform a patdown to protect themselves. We cannot assume that the police always or usually violated the law; in the absence of evidence to the contrary, we believe the police had articulable suspicion in their past encounters with him. If, as Whitaker argues, he had done nothing on June 26, 1988, that the police could have perceived as suspicious, he would have no reason to believe the police intended to stop him. Presumably there had been no recent reports of shots being fired, and the police had not uncovered stashed weapons immediately before they approached the picnic table. Whitaker concluded the police were about to perform an unlawful stop, and the trial court found this belief to be sincere. But this conclusion does not follow because unlike the prior occasions where there had been reports of gunfire or the police had found weapons, none of these suspicious facts warranting a stop were present. Therefore, our inquiry is limited to whether a reasonable person previously stopped on several occasions by certain officers based on reasonable suspicion would believe he or she was being stopped by the same officers for merely standing near a

picnic table in a public park. Common sense answers this question in the negative. Therefore, the police had not engaged in any unlawful conduct prior to Whitaker's abandonment of the drugs.

Because Whitaker had not been unlawfully stopped, he chose to drop the container of cocaine not as a result of police misconduct, but as a result of his own free will. The officers were free to pick up the voluntarily abandoned property. After examining its contents, they had probable cause to arrest Whitaker and seize the additional quantity of cocaine on his person. This seizure was a valid search incident to lawful arrest. *See State v. White,* 44 Wn. App. 276, 722 P.2d 118, *review denied,* 107 Wn.2d 1006 (1986).

The judgment and sentence is affirmed.

SWANSON, J., concurs.

WINSOR, J. (dissenting)—I respectfully dissent. In my opinion, when the officers approached Whitaker as he stood near the picnic table, Whitaker had a reasonable basis for believing that they would unlawfully detain him. His abandonment of the cocaine was, therefore, involuntary. Accordingly, I would hold the evidence to be unlawfully obtained, and reverse the conviction.

The dispositive issue here is whether Whitaker discarded the cocaine in response to illegal police conduct. *E.g., United States v. Tolbert,* 692 F.2d 1041 (6th Cir. 1982), *cert. denied,* 464 U.S. 933 (1983); *United States v. Morin,* 665 F.2d 765 (5th Cir. 1982). As the majority recognizes, resolution of this issue turns on whether, under the circumstances, a reasonable person would have believed that he or she was free to leave. Majority, at 853.

A fair reading of the facts contained in the record leads to the inescapable conclusion that a reasonable person in Whitaker's circumstances would not have felt free to leave. The arresting officers testified that for a month before the night in question they had patrolled the park where Whitaker was arrested "two or three times a night" to conduct a

"simple premise check to insure that there were no weapons or illegal activity taking place in the park". The officers also testified that they had encountered Whitaker in the park on prior occasions; that they had approached him and talked to him once or twice a night during the summer months; and that on nearly all of these occasions they had patted Whitaker down. One of the officers admitted that it "was pretty much standard procedure that, when you approached somebody and talked to one of the gang people in the park, you would pat them down", and that Whitaker "was no exception to that rule". Significantly, there is absolutely no evidence in the record indicating that on any of the prior occasions when the officers approached him and patted him down, Whitaker had been acting in a suspicious manner. Instead, as even the majority recognizes, the only testimony is that the officers approached Whitaker "to gather intelligence concerning gang activities." Majority, at 852.

The only reasonable conclusions to be drawn from this testimony are that these particular officers made a practice of detaining Whitaker whenever and wherever they encountered him; that they detained him not because of a reasonable suspicion of criminal activity, but simply to talk with him about gang activities; and that their detention usually included a pat–down search. No evidence suggests that on the night of his arrest, Whitaker had reason to expect a different scenario; thus, it was reasonable for him to anticipate that although he was doing nothing suspicious, the approaching officers would act in accord with their usual procedure and detain and search him. In other words, once these particular officers began walking toward him, it was reasonable for Whitaker to conclude that his freedom to leave was restricted.

The majority avoids this evidence–based analysis, however, and instead relies on its own presumptions to justify its holding that a reasonable person in Whitaker's situation would not have felt restricted from leaving. Specifically, the

majority concludes from an alleged *lack* of contrary evidence in the record that the officers' once or twice nightly prior detentions of Whitaker must have been based upon a reasonable suspicion of criminal activity; "that Whitaker's past experiences are entirely different from the present situation", majority, at 854; and that therefore, a reasonable person would have felt free to leave when the officers approached.

I find the majority's approach to be wholly unpersuasive. First, police officers are presumed to perform their duties properly and legally only absent evidence to the contrary. *State v. Hodge,* 11 Wn. App. 323, 330, 523 P.2d 953, *review denied,* 84 Wn.2d 1006 (1974); *Irwin v. Department of Motor Vehicles,* 10 Wn. App. 369, 370, 517 P.2d 619 (1974). Here, the officers' own testimony contradicts any presumption that their daily investigations of Whitaker were based upon a reasonable suspicion, and thus were proper and lawful. Instead, the officers testified that they routinely stopped and patted down Whitaker simply to talk with him about gang activities. Second, the majority seems to suggest that the defense had the burden to prove a *lack* of evidence of cause to search:

> On cross examination, defense counsel failed to ask questions to elicit—or to give them a chance to explain—what suspicious facts were known to the officers each time they performed these "illegal stops".

Majority, at 855. I am unaware of any authority imposing such a burden upon defendants.[1]

---

[1]Even if there were such a burden, there is ample evidence that the prior Whitaker detentions were not based on the requisite articulable suspicion of criminal activity. *Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). One of the arresting officers described an occasion when he stopped Whitaker and his brother as the two walked down the street, had them put their hands on the car, and patted them down for weapons. The officer admitted that he stopped Whitaker and his brother solely for intelligence gathering purposes, and that neither detainee had been committing any crimes at the time.

As a result of their presumption–based analysis, the majority limits the focus of its inquiry

> to whether a reasonable person previously stopped on several occasions by certain officers based on reasonable suspicion would believe he or she was being stopped by the same officers for merely standing near a picnic table in a public park.

Majority, at 855–56.

An inquiry statement based more precisely on the undisputed facts would instead be:

> Whether a reasonable person previously stopped and patted down by certain police officers one or two times a day for questioning about gang activity would believe that the same officers, who are walking toward him, would stop him or her and conduct a patdown search upon observing him standing near a picnic table in a public park.

The only fair answer to this inquiry is that a reasonable person would have believed he or she was about to once again be detained and patted down. The trial judge made just that finding.

Based on his prior experiences, Whitaker could not reasonably have felt free to leave once the officers began to approach him and his companions. On July 26, the police had no articulable suspicion for subjecting Whitaker to an investigatory stop. *See generally Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). Consequently, Whitaker's abandonment of the cocaine was in response to unlawful police conduct and was therefore involuntary. *E.g., United States v. Morin, supra.*

The abandoned cocaine should not be used against Whitaker. His conviction should be reversed.

Reconsideration denied December 4, 1990.

Review by Supreme Court pending March 15, 1991.