# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 68073-1-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| D.R., | ) | |
| Appellant. | ) | FILED: March 4, 2013 |
| | ) | |

LAU, J. — DR appeals his juvenile court conviction for possession of cocaine and obstruction of a law enforcement officer. He contends that the trial court erred in denying his CrR 3.6 motion to suppress the cocaine, arguing that he was unlawfully seized before he was searched incident to arrest. Because the trial court's unchallenged findings of fact support its proper conclusion that no unlawful seizure occurred, we affirm DR's convictions.

## FACTS

On a Saturday evening in April 2011, DR walked down the stairs from the Prefontaine/Yesler Way entrance and entered the Downtown Seattle Transit Tunnel. DR had been smoking marijuana with his friends. King County Sheriff's Detective

Gabriel Morris was patrolling the tunnel's mezzanine when he saw DR walking down the stairs. The officer's presence startled DR. DR walked to the elevator and pressed the call button. Morris knew that the elevator only traveled between the mezzanine and the street. He found it odd that someone would walk down the stairs only to take the elevator straight back to the street. Morris approached DR, "who was then eight to ten feet away, to ask why he doing so and told him to wait."

Detective Morris was within two or three feet of DR when he detected a strong odor of marijuana emanating from DR.[1] At this point, only seconds had passed since Morris first saw DR walking down the stairs. Morris arrested DR and placed him in handcuffs. During a search incident to arrest, DR attempted to flee. After regaining control of DR, Morris resumed his search and found two plastic baggies of crack cocaine in DR's clothing.

The State charged DR by amended information with possession of cocaine[2] and obstruction of a law enforcement officer.[3] DR moved under CrR 3.6 to suppress the cocaine as the fruit of an unlawful seizure. The trial court denied the motion and entered written findings of fact and conclusions of law.[4] After a bench trial, the trial court found DR guilty on both charges. DR appeals his convictions.

---

[1] It is undisputed that the strong odor of marijuana, particularized to DR, provided Morris with probable cause to arrest.

[2] RCW 69.50.4013.

[3] RCW 9A.76.020.

[4] The trial court also denied DR's CrR 3.5 motion. That ruling is not at issue in this appeal.

-2-

## ANALYSIS

DR challenges the trial court's conclusions of law 1, 2, 3, and 6.[5] He specifically argues that he was unlawfully seized for purposes of article I, section 7 of the Washington Constitution when Morris approached him and told him to wait.[6] Whether DR was constitutionally seized is a mixed question of law and fact. State v. Armenta,

---

[5] DR challenges the following conclusions of law:

"1. Respondent's [DR] actions of appearing startled upon seeing Detective Morris and immediately walking to the elevator did not amount to articulable suspicion that would have justified [a] Terry stop. Based on an objective examination of Detective Morris's first actions upon contacting the Respondent, there was no physical force or display of authority that would have caused a reasonable person in the Respondent's position to believe that he or she was not free to leave or to decline the request[.]

"2. Uttering the word "wait," by itself, is not sufficient to amount to a seizure[.]

"3. At the time that Detective Morris approached and began speaking to the Respondent, the Respondent was not seized and Detective Morris did not need any articulable suspicion to act as he did.

". . . .

"6. The baggies of crack cocaine and the Respondent's subsequent statements are admissible because they are not the result of an unlawful seizure or an unlawful search[.]"

[6] The trial court found:

"1. On April 16, 2011, just before 6:30 p.m., the Respondent entered the Downtown Seattle Bus Tunnel's Pioneer Street Station (PSS) by walking down the stairs from the Yesler Way entrance. The Respondent had just been dropped off by friends at street level after smoking marijuana with them in their car.

"2. At that time, King County Detective Gabriel Morris was on duty, in full uniform, patrolling the mezzanine level of the PSS. Detective Morris observed the Respondent walk down the stairs and across the mezzanine. The Detective was initially out of sight of the respondent. The respondent appeared startled when he noticed the detective. The Respondent then walked towards the elevator and pressed the call button.

"3. Detective Morris knew that from that location, the elevator only goes to the street level. Detective Morris found it odd that someone would go up in the elevator after having just come down the stairs, so he approached the Respondent, who was then eight to ten feet away, to ask why he was doing so and told him to wait. Detective Morris did not use any physical force or display his weapon at this time. At that moment, the Detective had no articulable suspicion that would justify a Terry stop. [Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)]. The respondent testified that he believed he was not free to leave at that time." (Formatting omitted.)

134 Wn.2d 1, 9, 948 P.2d 1280 (1997). The trial court's unchallenged findings of fact are verities on appeal.[7] State v. O'Neill, 148 Wn.2d 564, 571, 62 P.3d 489 (2003). Accordingly, our review is "limited to a de novo determination of whether the trial court derived proper conclusions of law from those findings." Armenta, 134 Wn.2d at 9. We conclude that the trial court properly ruled that no unlawful seizure occurred.

Under article I, section 7,[8] "[p]olice effect the seizure of a person when they objectively manifest that they are restraining the person's movement, and a reasonable person would believe that he or she is not free to leave." State v. Salinas, 169 Wn. App. 210, 217, 279 P.3d 917 (2012). "'Whether a reasonable person would believe he was detained depends on the particular, objective facts surrounding the encounter.'" Armenta, 134 Wn.2d at 11 (quoting State v. Ellwood, 52 Wn. App. 70, 73, 757 P.2d 547 (1988)). Accordingly, to determine whether a seizure occurred, we focus only on the actions of the officer. O'Neill, 148 Wn.2d at 574. We do not consider the officer's subjective intent unless it was conveyed to the suspect. O'Neill, 148 Wn.2d at 575. Likewise, we do not consider the suspect's "subjective perceptions." State v. Whitaker, 58 Wn. App. 851, 854, 795 P.2d 182 (1990).

Washington courts have long recognized that not every encounter between an officer and an individual amounts to a seizure. State v. Nettles, 70 Wn. App. 706, 709,

---

[7] The trial court's written findings and conclusions incorporated its oral findings and conclusions.

[8] Under article I, section 7, which provides, "No person shall be disturbed in his private affairs . . . without authority of law," a warrantless search or seizure is per se unreasonable unless the State demonstrates it falls within one of the exceptions to the warrant requirement. State v. Kinzy, 141 Wn.2d 373, 384, 5 P.3d 668 (2000). The State does not argue that an exception applies. Therefore, the sole issue on appeal is whether Detective Morris's initial contact with DR constituted a seizure.

855 P.2d 699 (1993). "Law enforcement officers do not 'seize' a person by merely approaching that individual on the street or in another public place, or by engaging him in conversation."[9] State v. Belanger, 36 Wn. App. 818, 820, 677 P.2d 781 (1984). These interactions, which are often termed "social contacts," are permissible because "effective law enforcement . . . necessitate[s] interaction with citizens on the streets." State v. Harrington, 167 Wn.2d 656, 665, 222 P.3d 92 (2009).

In United States v. Mendenhall, 446 U.S. 544, 554, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980), the Supreme Court articulated a list of nonexclusive factors that may transform a permissible social contact into an impermissible warrantless seizure:

> Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

Mendenhall, 446 U.S. at 554-55. Washington courts frequently rely on these factors to analyze whether a seizure occurred. E.g., Harrington, 167 Wn.2d at 666; State v. Young, 135 Wn.2d 498, 512, 957 P.2d 681 (1998).

None of the Mendenhall factors is present here. Although Morris's partner was present in the transit tunnel, it is undisputed that DR saw only Morris at the time of the

---

[9] For example, no seizure occurred when an officer parked her patrol car, exited, and called out to a group of men, "'Gentlemen, I'd like to speak with you, could you come to my car?'" Nettles, 70 Wn. App. at 708; see also State v. Bailey, 154 Wn. App. 295, 298, 224 P.3d 852 (2010) (no seizure where officer saw the suspect walking on a deserted street and asked if he "had a minute"); State v. Aranguren, 42 Wn. App. 452, 454, 711 P.2d 1096 (1985) (no seizure where officer exited patrol car and said, "[C]an I talk to you guys for a minute[?]").

initial contact. DR did not face "the threatening presence of several officers . . . ."[10] Mendenhall, 446 U.S. at 554. And it is undisputed that Morris never displayed a weapon or physically touched DR. Mendenhall, 544 U.S. at 554. He spoke to DR from a distance of eight to ten feet. There is no evidence in the record that Morris restrained DR's movement. Finally, the word "wait"—uttered by a single officer, approaching on foot in a public place, from a distance of eight to ten feet, without any use or display of force, and within seconds after first observing the subject—would not indicate to a reasonable person that "compliance with the officer's request might be compelled."[11] Mendenhall, 544 U.S. at 554.

DR cites Ellwood, 52 Wn. App. 70, State v. Friederick, 34 Wn. App. 537, 663 P.2d 122 (1983), and State v. Sweet, 44 Wn. App. 226, 721 P.2d 560 (1986), to argue that "statements such as 'halt,' 'stop, I want to talk to you,' 'wait right here,' and the like qualify as seizures." Appellant's Opening Br. at 8. But those cases are distinguishable. In Sweet, we held that a seizure occurred when officers yelled, "Halt! Police!" at a fleeing man while driving towards him in their patrol car. Sweet, 44 Wn. App. at 228. In Friederick, similarly, we held that a seizure occurred when an officer "confronted" a suspect who had recently exited a hotel lobby, saying, "'Stop. I want to talk to you.'" Friederick, 34 Wn. App. at 540. The individual in each case was seized because, under the circumstances, a reasonable person would have submitted to the officer's

---

[10] As stated above, we do not consider the subject's subjective perceptions. Whitaker, 58 Wn. App. 854. Thus, the fact that DR feared Morris would "tase" him if he tried to leave is irrelevant. There is no evidence in the record that Morris used or threatened any type of physical force.

[11] The record contains no information about the tone or volume of Morris's voice.

command. <u>Sweet</u>, 44 Wn. App. at 230. Here, in contrast, DR was standing still, waiting for the elevator doors to open, when Morris said, "wait." Unlike in <u>Sweet</u> and <u>Friederick</u>, Morris's statement was not an "immobilizing" command. <u>See</u> <u>Nettles</u>, 70 Wn. App. at 710 ("[Generally,] no seizure occurs when a police officer merely asks an individual whether they will answer questions or when the officer makes some further request that falls short of immobilizing the individual.").

And, in <u>Ellwood</u>, we held that a seizure occurred when an officer, flashlight in hand, approached two individuals near an alley, asked them what they were doing, obtained their names and dates of birth, and then told them to "[w]ait right here" while he returned to his patrol car to check for warrants. <u>Ellwood</u>, 52 Wn. App. at 72 (alteration in original). In light of his previous actions, the officer's statement objectively signaled that the individuals were not free to leave. <u>Ellwood</u>, 52 Wn. App. at 73. Here, in contrast, "wait" was the first word Morris uttered. Unlike in <u>Ellwood</u>, the statement did not come at the end of a "progressive intrusion" into DR's privacy. <u>Harrington</u>, 167 Wn.2d at 666 (analyzing a series of events that "snowballed" into a seizure).

DR cites no authority holding that a reasonable person, when addressed in public by a single uniformed officer saying "wait" while approaching from a distance of eight to ten feet, would not have felt free to disregard Morris's statement and terminate the encounter. We conclude that Morris's initial interaction with DR was a permissible social contact that had not escalated into a seizure by the time Morris detected the odor of marijuana.

## CONCLUSION

Because the trial court's unchallenged findings of fact support its conclusion that no unlawful seizure occurred, we affirm DR's convictions.

WE CONCUR:

Spearman, A.C.J.

Becker, J.