[No. 19625-5-II.   Division Two.   May 2, 1997.]

THE STATE OF WASHINGTON, *Appellant*, v. KEVIN YOUNG, *Respondent*.

196

*John W. Ladenburg, Prosecuting Attorney,* and *Mark Von Wahlde, Deputy,* for appellant.

*Lise Ellner* of *Pierce County Department of Assigned Counsel,* for respondent (appointed counsel for appeal).

HOUGHTON, C.J. — Kevin Young was present in a high crime area at night. A police officer made a "social contact" with Young and ran a criminal records check on his name. After learning that Young had a history of drug offenses, the officer returned to the scene and shined his spotlight on Young. As Young walked away from the officer, he discarded contraband materials behind a tree. The State appeals the trial court's suppression of evidence based upon its conclusion that the officer's illumination of Young with his spotlight constituted a "seizure" under the Fourth Amendment. We hold that Young was not "seized" by the floodlight illumination and therefore reverse and remand for further proceedings.

## FACTS

The facts are not in dispute. On August 24, 1994, Pierce County Deputy Sheriff Robert Carpenter was on patrol in Tacoma. At approximately 9:40 p.m., the deputy saw Young standing at the corner of Chicago and Lincoln Avenue S.W., an area known for high drug activity.

Although the deputy did not find Young's activity suspicious, he made "social contact" with Young and asked him his name. As the deputy drove away, he requested a computer criminal records check and discovered that Young had an extensive criminal background involving drugs. In his rear view mirror, the officer then observed Young walk to the middle of the street, as if to see if the deputy was leaving.

The deputy turned his patrol car around and drove back toward Young. As he approached, the deputy activated the car spotlight, illuminating Young and the surrounding area. Young walked rapidly toward some trees, tossed "an apparent package or something" behind a tree, walked quickly away from the trees, and then resumed a normal walk down the sidewalk.

Believing that Young was involved in drug related activity, or at least littering, the deputy detained Young and

retrieved the object. The deputy recovered a half soda can charred on the bottom and containing a hard, crystallized, tan substance. Based upon his experience, the deputy believed that this substance was "freebased" crack cocaine.

The officer arrested and searched Young and found a copper colored pipe and a lighter. Young was charged with the unlawful manufacturing of an imitation controlled substance under RCW 69.52.030(1).[1]

Young moved under CrR 3.6 to suppress all evidence gained from the arrest. The trial court granted Young's motion, finding that Young was "seized at the point that the deputy illuminated [him] with the spotlight." The trial court also found that at the time of Young's "seizure," the deputy did not have a reasonable articulable suspicion to believe Young was involved in criminal activity. Thus, the trial court reasoned, the seizure was improper and all evidence discovered as a result of the detention was deemed inadmissible. The State appeals.

## ANALYSIS

■■ Appellate review of a conclusion of law, based upon findings of fact, is limited to determining whether the trial court's findings are supported by substantial evidence, and whether those findings in turn support the conclusion of law. *State v. Graffius*, 74 Wn. App. 23, 29, 871 P.2d 1115 (1994). The determination of whether a seizure has occurred under the Fourth Amendment is a mixed question of law and fact. *State v. Thorn*, 129 Wn.2d 347, 351, 917 P.2d 108 (1996). The circumstances surrounding an encounter between a police officer and a citizen involve a factual determination. The ultimate resolution of whether these circumstances amount to a seizure under the Fourth Amendment, however, is a question of law. *Thorn*, 129 Wn.2d at 351 (citing *Martinez v. Nygaard*, 831 F.2d 822, 826 (9th Cir. 1987)).

---

[1]Young was charged under the "imitation controlled substances" statute because laboratory tests after the arrest concluded that the substance in the can was not a controlled substance, but rather was made from powdered Vitamin B.

## SEIZURE UNDER THE FOURTH AMENDMENT

The Fourth Amendment to the United States Constitution and article I, section 7 of the Washington State Constitution provide that all citizens are to be free from unreasonable searches and seizures, and not disturbed in their private affairs.[2] Searches and seizures must be supported by probable cause, or be conducted pursuant to one of the narrowly drawn exceptions to that rule. *State v. Hudson,* 124 Wn.2d 107, 112, 874 P.2d 160 (1994). All seizures of persons, including brief detentions, must be reasonable. *State v. Glover,* 116 Wn.2d 509, 513, 806 P.2d 760 (1991).

Fourth Amendment protection is implicated only when an encounter between a police officer and a citizen rises to the level of "seizure." A person is "seized" within the meaning of the Fourth Amendment "when, by means of physical force or a show of authority, his freedom of movement is restrained [and] . . . in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he [or she] was not free to leave." *State v. Stroud,* 30 Wn. App. 392, 394-95, 634 P.2d 316 (1981), *review denied,* 96 Wn.2d 1025 (1982) (citing *United States v. Mendenhall,* 446 U.S. 544, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980)). The burden of proving a seizure occurred is upon the accused. *Thorn,* 129 Wn.2d at 354; *State v. Jackson,* 82 Wn. App. 594, 601-02, 918 P.2d 945 (1996), *review denied,* 131 Wn.2d 1006 (1997); *see* WAYNE R. LAFAVE, SEARCH AND SEIZURE § 11.2(b), at 44-45 (3d ed. 1996).

---

[2]The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to.be searched, and the persons or things to be seized.

Article I, section 7 of the Washington State Constitution provides: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law."

Examples of a seizure include the threatening presence of several officers, the display of a weapon by an officer, physical touching of an individual, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. *Mendenhall,* 446 U.S. at 554. The *Mendenhall* analysis above, however, establishes "a necessary, but not a sufficient, condition for seizure." *California v. Hodari D.,* 499 U.S. 621, 628, 111 S. Ct. 1547, 113 L. Ed. 2d 690 (1991). In a situation in which the officer does not physically touch the suspect, the suspect is not seized until he or she submits to the officer's show of authority. *Hodari D.,* 499 U.S. at 625-26.

Thus, not every encounter between a police officer and a citizen constitutes a seizure. A police officer does not seize a person by simply striking up a conversation or asking questions. *Florida v. Bostick,* 501 U.S. 429, 434, 111 S. Ct. 2382, 115 L. Ed. 2d 389 (1991). In the present case, Young *was not* seized by the deputy's initial "social contact," and Young *was* seized when the deputy finally ordered him to stop and he complied with that command. The question is whether Young was seized before the final stop, at the point the officer illuminated him with the spotlight.

As an initial matter, we note that whether a deputy's use of a spotlight alone constitutes a seizure has not been addressed in Washington. We hold that the illumination of Young was not a seizure under the Fourth Amendment. Although the light may constitute a show of authority, *Hodari D.* requires submission to that show of authority. Here, after the deputy illuminated Young, Young walked quickly to a stand of trees, disposed of his package, and continued to walk down the street. He did not stop walking until the deputy ordered him to stop. *See Hodari D.,* 499 U.S. at 621 (holding that even though police chased suspect on foot for a significant distance, no seizure occurred until officers physically restrained him). Thus, Young was not seized until he submitted to the officer's command to stop.

As there was no seizure until Young complied with

the officer's order to stop, the deputy properly retrieved the charred can as voluntarily abandoned property, and there was no violation of Young's Fourth Amendment rights. *State v. Nettles,* 70 Wn. App. 706, 708, 855 P.2d 699 (1993), *review denied,* 123 Wn.2d 1010 (1994). Discarded property is voluntarily abandoned unless there is unlawful police conduct, and a causal nexus exists between that conduct and the abandonment. *State v. Whitaker,* 58 Wn. App. 851, 856, 795 P.2d 182 (1990), *review denied,* 812 Wn.2d 103 (1991).

■ Police officers may make investigatory, or *Terry,*[3] stops without probable cause if they have a reasonable articulable suspicion of criminal activity, and they may stop a person, ask for identification, and an explanation of the person's activities. *Glover,* 116 Wn.2d at 513-14 (quoting *Terry v. Ohio,* 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). Here, the deputy did not have a reasonable articulable suspicion of criminal activity until after Young dropped the can. Young's conduct at that point was highly indicative of drug activity. Therefore the deputy properly detained Young. The trial court erred in excluding the evidence under the Fourth Amendment.

## THE STATE CONSTITUTION

Young further contends that even if the seizure did not violate the Fourth Amendment, the trial court was correct in granting his motion to suppress because the seizure violated article I, section 7 of the Washington State Constitution. More specifically, he asserts that article I, section 7 prevents application of *Hodari D.* to this case. Thus, he asserts that physical restraint or submission to a show of authority is not a predicate to "seizure" under the state constitution.

■ Article I, section 7 has been interpreted to provide greater protection to individual privacy interests than

---

[3]*Terry v. Ohio,* 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

parallel provisions of the United States Constitution. *State v. White*, 97 Wn.2d 92, 110, 640 P.2d 1061 (1982); *State v. Chrisman*, 100 Wn.2d 814, 818, 676 P.2d 419 (1984). There are six nonexclusive criteria outlined in *State v. Gunwall*,[4] which are necessary for an independent interpretation under the state constitution. *State v. Carter*, 127 Wn.2d 836, 847, 904 P.2d 290 (1995) (citing *State v. Gunwall*, 106 Wn.2d 54, 64-67 (1986)).

In other article I, section 7 challenges, the Supreme Court has adopted the *Gunwall* court's analysis of the first, second, third and fifth factors because they do not vary from case to case. *See, e.g., State v. Goucher*, 124 Wn.2d 778, 783, 881 P.2d 210 (1994); *State v. Boland*, 115 Wn.2d 571, 575-76, 800 P.2d 1112 (1990). Thus, we will consider only the fourth and sixth factors independently in this case.

▇▇▇ The fourth *Gunwall* factor considers preexisting state law. Presently in Washington, a seizure occurs "when the circumstances surrounding the encounter demonstrate that a reasonable person would believe he [or she] was not free to leave." *State v. Toney,* 60 Wn. App. 804, 806, 810 P.2d 929, *review denied,* 117 Wn.2d 1003 (1991) (citing *Mendenhall,* 446 U.S. at 554; *State v. Ellwood,* 52 Wn. App. 70, 73, 757 P.2d 547 (1988)). Application of *Hodari D.* in state constitutional analysis would not significantly alter the manner in which seizure is now considered by the courts. For example, in *State v. Nettles,* the court considered the fact that Nettles' companion continued to walk away as the officer spoke with Nettles as "a forceful indication that neither individual was required to or felt compelled by the circumstances to stop." *Nettles,* 70 Wn. App. at 711.

The sixth *Gunwall* factor examines whether the issue is

---

[4]*State v. Gunwall,* 106 Wn.2d 54, 64-67, 720 P.2d 808 (1986), provides the following criteria for determining whether the state constitution provides greater protection of defendants' privacy interest than its federal counterpart: (1) textual language; (2) differences in texts; (3) constitutional and common law history; (4) preexisting state law; (5) structural differences; and (6) matters of particular state or local concern. *Gunwall,* 106 Wn.2d at 61-62.

one of state or local concern. Our courts have sacrificed national uniformity at times for greater protection of citizens where significant privacy concerns are at stake. *State v. Audley*, 77 Wn. App. 897, 903, 894 P.2d 1359 (1995). But we find that such concerns are not implicated here.

We hold that the rule in *Hodari D.* applies to this case under both the federal and state constitutional analysis. Young was in a public place throughout the encounter. He was not disturbed in his "private affairs" or in his home as contemplated in the language of article I, section 7 and in the cases granting a greater privacy interest under state law. *See Boland*, 115 Wn.2d at 578 (holding that an enhanced expectation of privacy under article I, section 7 exists in one's garbage can or the curtilage); *Gunwall*, 106 Wn.2d at 63 (holding that a greater expectation of privacy exists under article I, section 7 in personal telephone pen registers).

In conclusion, the stipulated findings of fact do not support the trial court's conclusions. *See State v. Watson*, 56 Wn. App. 665, 666, 784 P.2d 1294 (findings of fact and conclusions of law must be sufficient to withstand appellate scrutiny when standing on their own), *review denied*, 114 Wn.2d 1028 (1990). Thus, we reverse the trial court's suppression order, and the matter is remanded for further proceedings consistent with this opinion.

MORGAN, J., and TURNER, J. Pro Tem., concur.

Review granted at 133 Wn.2d 1020 (1997).