[No. 70213-6.   En Banc.]
Argued May 8, 2001.    Decided July 19, 2001.

THE STATE OF WASHINGTON, *Respondent*, v. JODY IRA REYNOLDS, *Petitioner*.

---

*Nelson E. Hunt* (of *Mano, McKerricher, Paroutaud, Hunt & Sprague, Inc., P.C.*), for petitioner.

*Jeremy Randolph, Prosecuting Attorney,* and *J. Andrew Toynbee, Deputy,* for respondent.

OWENS, J. — Defendant Jody Ira Reynolds, a passenger in a vehicle stopped for a traffic infraction, contends that he was unconstitutionally seized when the lone officer at the scene directed him to remain in the vehicle until the officer had finished processing the driver's arrest on an outstand-

ing warrant. Reynolds argues that, because the seizure was unconstitutional, the trial court should have granted his motion to suppress the evidence that the officer subsequently discovered in a coat found under the vehicle. We hold that Reynolds voluntarily abandoned the coat and that, consequently, he had no constitutionally protected privacy interest in the coat's contents. As the Court of Appeals concluded, the trial court properly denied the motion to suppress. We affirm the Court of Appeals.

## FACTS

At approximately 5:40 p.m. on May 2, 1997, Pe Ell Deputy Marshall Kurt Wetzold was monitoring traffic on North Main Street in Pe Ell when he observed a southbound vehicle with a cracked windshield. After stopping the vehicle, Deputy Wetzold explained to its driver, Sarah Rogers, the reason for the stop. As he spoke with Rogers, Deputy Wetzold noticed a green coat lying on the passenger side floorboard in front of Reynolds, the vehicle's only passenger. After learning through dispatch that Rogers was driving with a suspended license, Deputy Wetzold returned to the vehicle, advised Rogers that she was under arrest, asked her to step from the vehicle, and escorted her to his patrol car. As Deputy Wetzold was speaking with Rogers at the rear of his patrol car, prior to handcuffing her, Reynolds stepped from the vehicle, and Deputy Wetzold "asked him to please remain within the vehicle until [he] was done with Ms. Rogers." Report of Proceedings (RP) at 15; *see also* RP at 14, 25-27; Clerk's Papers (CP) at 20 (Finding of Fact 8).

After Wetzold patted Rogers down, handcuffed her, and placed her in the rear seat of his patrol car, he returned to the driver's side of the Rogers vehicle, told Reynolds through the driver's window that he needed to search the vehicle, and asked him to step out. Deputy Wetzold then saw that the green coat was no longer on the passenger side floorboard. Circling around to the other side of the vehicle,

Deputy Wetzold then noticed that the coat was lying on the ground, "stuffed underneath the passenger side of the vehicle." CP at 20 (Finding of Fact 11). Although it had been raining intermittently prior to the stop and at times heavily during the stop, the coat was dry; nor did it appear that the coat had been run over by the car, despite the coat's position behind the front tire. When asked about the coat, Reynolds "replied that the coat was not his and that he did not put it under the vehicle." CP at 21 (Finding of Fact 13); *see also* RP at 17-20 *passim*. Deputy Wetzold searched the coat and found a white powdery substance and drug paraphernalia. After arresting Reynolds for possession of drug paraphernalia, Deputy Wetzold read Reynolds his *Miranda*[1] rights, handcuffed him, and placed him in the rear of the patrol car. When the powdery substance yielded a positive field test for the presence of a controlled substance, Deputy Wetzold told Reynolds he was under arrest for possession of a controlled substance. In an amended information, Reynolds was charged with possession of methamphetamine in violation of RCW 69.50.401.

Reynolds moved to suppress the evidence recovered in the search of the coat, but the trial court denied the CrR 3.6 motion. The court found that Deputy Wetzold had probable cause to stop the vehicle and had the right thereafter to check the driver's status, arrest the driver on the criminal traffic offense, and search the vehicle incident to that arrest. Regarding the search of the green coat, the trial court reached the following conclusion:

> There is no expectation of privacy in the coat because the defendant denied owning the coat, and because it was found underneath the vehicle not inside the vehicle. Therefore, the officer had a right to search the coat as it was a found item. The Court declined to decide whether or not the search of the coat was incident to a search of the vehicle.

CP at 22 (Conclusion of Law 5) (citations omitted). Having stipulated to the facts found at the suppression hearing,

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Reynolds was found guilty in a nonjury trial.

Raising several issues, Reynolds appealed the trial court's denial of his motion to suppress evidence. Affirming the trial court, the Court of Appeals concluded that the traffic stop was not pretextual, that Reynolds lacked standing to challenge the driver's arrest, and that the seizure of Reynolds and the search of the abandoned coat were constitutionally sound.

Reynolds petitioned this court for review. We granted review and now affirm the Court of Appeals.

## ISSUE

Did Reynolds voluntarily abandon the coat, thereby extinguishing any right to challenge on privacy grounds the constitutionality of the subsequent search of that item?

## ANALYSIS

■ Reynolds petitioned this court for review of a single question of law—whether the deputy's directive that Reynolds remain in the vehicle was an unconstitutional seizure.[2] The record shows that Reynolds raised the issue before the trial court, arguing that, because the deputy had no right to detain Reynolds, the search of the coat was improper. None of the trial court's conclusions of law addressed the lawfulness of the deputy's seizure of Reynolds, presumably because the trial court determined that the search of the "found item" was not to be construed as a search of Reynolds or his property. CP at 22 (Conclusion of Law 5). In his opening brief on appeal, Reynolds again raised the issue of the constitutionality of the deputy's directive, but embedded in his assignment of error was the presupposition that a search of the coat was a search of

---

[2] It was undisputed that Reynolds was seized when the deputy directed him to remain in the vehicle. *See State v. Mendez*, 137 Wn.2d 208, 222-23, 970 P.2d 722 (1999).

his person.[3] Reynolds repeated that presupposition in his petition for review, asserting that the deputy's unconstitutional seizure required suppression of "[t]he fruits of *any further search of Mr. Reynolds or his property.*" Pet. for Review at 16 (emphasis added). Clearly, although Reynolds petitioned this court for review of the narrower legal issue of whether the detention was lawful, the overarching question is whether the lawfulness of the seizure of Reynolds could carry any Fourth Amendment implications for the search of the discarded and disclaimed coat. In other words, the broader legal issue here is whether Reynolds has correctly presupposed that the unlawfulness of the seizure would require suppression of the evidence retrieved from the coat. The Court of Appeals concluded that Reynolds had voluntarily surrendered any right to assert a privacy interest in the coat's contents. We review this conclusion of law de novo. *State v. Johnson,* 128 Wn.2d 431, 443, 909 P.2d 293 (1996).

Needing neither a warrant nor probable cause, law enforcement officers may retrieve and search voluntarily abandoned property without implicating an individual's rights under the Fourth Amendment or under article I, section 7 of our state constitution.[4] However, property cannot be deemed voluntarily abandoned (and thus subject to search) if a person abandons it because of unlawful police conduct. *State v. Whitaker,* 58 Wn. App. 851, 853, 795 P.2d 182 (1990) (citing *United States v. Tolbert,* 692 F.2d 1041, 1045 (6th Cir. 1982), *cert. denied,* 464 U.S. 933 (1983);

---

[3] "The court erred by failing to conclude that the officer had no basis *to detain and search the defendant* who was a passenger in a vehicle the driver of which had been arrested." Br. of Appellant at 1 (emphasis added).

[4] *See State v. Whitaker,* 58 Wn. App. 851, 853, 795 P.2d 182 (1990) (citing *State v. Serrano,* 14 Wn. App. 462, 464, 470, 544 P.2d 101 (1975); *State v. Swaite,* 33 Wn. App. 477, 485 n.5, 656 P.2d 520 (1982); *State v. Tidwell,* 23 Wn. App. 506, 508, 597 P.2d 434 (1979)), *review denied,* 116 Wn.2d 1028 (1991); *State v. Goucher,* 124 Wn.2d 778, 784, 881 P.2d 210 (1994) (citing *State v. Young,* 123 Wn.2d 173, 181, 867 P.2d 593 (1994)); *see also* 1 JOHN WESLEY HALL, SEARCH AND SEIZURE § 13.1 (3d ed. 2000); John P. Ludington, Annotation, *Search and Seizure: What Constitutes Abandonment of Personal Property Within Rule That Search and Seizure of Abandoned Property Is Not Unreasonable—Modern Cases,* 40 A.L.R.4th 381 (1985).

*Fletcher v. Wainwright*, 399 F.2d 62 (5th Cir. 1968)), *review denied*, 116 Wn.2d 1028 (1991). This is consistent with the principle that "[e]vidence produced as the result of an unlawful seizure is not admissible against an accused." *State v. Nettles*, 70 Wn. App. 706, 709, 855 P.2d 699 (1993) (citing *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961)). Consequently, where a defendant abandoned property and that property was subsequently searched, the defendant may assert a constitutionally protected privacy interest only upon a showing that he or she *involuntarily* abandoned the property in response to illegal police conduct. To establish that the abandonment of the searched property was involuntary, a defendant must therefore show two elements: "(1) unlawful police conduct and (2) a causal nexus between the unlawful conduct and the abandonment." *Whitaker*, 58 Wn. App. at 853 (citing *United States v. Roman*, 849 F.2d 920, 923 (5th Cir. 1988)); *Nettles*, 70 Wn. App. at 708 (citing *Whitaker*).

█ █ Basing its rejection of Reynolds's involuntary abandonment claim on the first element, the Court of Appeals concluded that the deputy's directive that Reynolds remain in the vehicle was constitutionally sound. The Court of Appeals determined that the deputy had satisfied the "objective rationale" standard set forth in *State v. Mendez*, 137 Wn.2d 208, 970 P.2d 722 (1999). There, we held that, upon stopping a vehicle for a traffic violation, a police officer may order passengers into or out of the vehicle only if the officer is "able to articulate *an objective rationale predicated specifically on safety concerns.*" *Id.* at 220 (emphasis added). The circumstances at the scene of the stop determine whether such an articulable, objective rationale exists. *Id.* at 221. In weighing those circumstances, the officer may consider several nonexclusive factors, none of which, standing alone, would automatically meet the objective rationale standard: "the number of officers, the number of vehicle occupants, the behavior of the occupants, the time of day, the location of the stop, traffic at the scene, affected citizens, or officer knowledge of the occupants." *Id.* In the

lead opinion in *State v. Parker*, 139 Wn.2d 486, 987 P.2d 73 (1999), this court recognized that the arrest of a vehicle occupant (a circumstance not present in *Mendez*) supplied an additional factor that an officer could consider when controlling the scene of a vehicle stop:

> [T]he circumstance of an arrest falls squarely within the rule of *Mendez*. Thus, a vehicle stop *and arrest in and of itself* provides officers an objective basis to ensure their safety by "controlling the scene," *including ordering passengers in or out of the vehicle as necessary.*

*Id.* at 502 (emphasis added) (citing *Mendez*, 137 Wn.2d at 220-21).

Acknowledging the guidance of the *Mendez* factors, the Court of Appeals in the present case noted that there were two vehicle occupants and only one officer at the scene, but the court placed greatest emphasis on Deputy Wetzold's responsibility for attending to the arrest of the driver:

> The officer's directive to Reynolds to re-enter the vehicle occurred while he was "processing" and otherwise occupied with the driver. Although Reynolds exhibited no furtive or suspicious behavior, the mere fact that he exited the vehicle while the lone officer was occupied with the driver gave rise to a heightened concern for officer safety. Because the officer could not keep an eye on both Reynolds and the driver, the officer's directive was warranted by an objective concern for his safety and well-being.

*State v. Reynolds*, No. 22480-1-II, slip op. at 7 (Wash. Ct. App. Aug. 25, 2000). The court's analysis drew on Deputy Wetzold's testimony that he had been concerned for his safety because he was the lone officer, was occupied with the driver's arrest on a criminal offense, and was unfamiliar with Rogers and Reynolds:

Q   During the time that you were speaking with Ms. Rogers at the back of your patrol vehicle, did anything else significant happen?

A   Well, while speaking with Ms. Rogers, Mr. Reynolds stepped from his vehicle or from the vehicle and I asked

him to please remain within the vehicle *until I was done with Ms. Rogers.*

Q   Why did you do that?

A   Officer safety reasons.

Q   *Were you the only officer on the scene at this particular stop?*

A   *Yes, I was.*

Q   When you indicated officer safety reasons, deputy, what sorts of things do you mean by that?

A   *Not being familiar with the subjects, already having one criminal offense,* for my safety I — and in training being at all times to keep the individuals within the vehicle to contain anybody that's on the scene.

RP at 14-15 (emphasis added). Deputy Wetzold further explained on cross examination that he had not wanted Reynolds to be "out of the vehicle" and possibly "back . . . where [he] was . . . while [he] was trying to control the situation at the rear of [his] car," and he asserted that he "had a reasonable fear and a concern for [his] safety and therefore . . . wanted [Reynolds] to remain within the vehicle." RP at 26-27.

We decline to hold that the Court of Appeals erred in concluding that the circumstances at the scene failed to satisfy the objective rationale standard of *Mendez.* The deputy's testimony cited two of the *Mendez* factors and emphasized the additional factor identified in *Parker*—the heightened safety concerns attending the arrest of another vehicle occupant. However, whether the deputy's directive constituted an unlawful seizure of Reynolds is immaterial in this case because Reynolds clearly cannot meet the second requirement—the demonstration of "a causal nexus between the unlawful conduct and the abandonment." *Whitaker,* 58 Wn. App. at 853; *Nettles,* 70 Wn. App. at 708. As to the second element, it is clear that "[p]roperty abandoned *prior to* a seizure is not the product of any illegal police conduct." *Nettles,* 70 Wn. App. at 708 (emphasis added). After the prosecution meets its burden of showing

that the property was abandoned, the defendant seeking to show involuntary abandonment must necessarily establish that he or she discarded the item *after* the allegedly unlawful police conduct occurred. Here, the success of Reynolds's claim of involuntary abandonment hinged on his showing that he had stuffed the coat underneath the vehicle *after* the deputy ordered him to get back inside the vehicle. The trial court did not make that necessary finding, nor does anything in the record establish this critical element of timing. We therefore must reject Reynolds's contention that he involuntarily abandoned the coat in response to allegedly unlawful police conduct.

## CONCLUSION

In *State v. Parker*, a majority of this court agreed that, where an officer knows that a personal item belongs to a nonarrested, nonsuspected passenger, that item cannot be automatically reached in a search incident to another vehicle occupant's arrest.[5] The defendant in this case abandoned and disclaimed his personal property. Having done so, he was left to argue that he had involuntarily abandoned the coat in response to unlawful police conduct. We reject that position and hold that Reynolds voluntarily abandoned the coat, thereby relinquishing his right to challenge the constitutionality of the subsequent search of that item. We affirm the decision of the Court of Appeals upholding the trial court's denial of the defendant's motion to suppress.

ALEXANDER, C.J., and SMITH, JOHNSON, MADSEN, SANDERS, IRELAND, BRIDGE, and CHAMBERS, JJ., concur.

---

[5] In the lead opinion, a plurality held that a search incident to the driver's arrest "does not automatically extend to . . . personal possessions police know or should know belong to . . . nonarrested individuals." *Parker*, 139 Wn.2d at 489. That rule was limited in a dissenting opinion to personal possessions that an officer knows belong to a particular passenger. *Id.* at 518 (Alexander, J., concurring in part, dissenting in part).