IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 81830-9-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JESSE DEAN BRITAIN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |
| | ) | |

VERELLEN, J. — An officer may conduct a traffic stop of a vehicle where the officer has a reasonable articulable suspicion that a traffic infraction has been committed. Under article I, section 7 of the Washington Constitution, the scope and duration of a traffic stop are governed by the principles in Terry v. Ohio.[1] A traffic stop is not pretextual if the lawful reason for the stop is actual, conscious, and independent from any unlawful reason. Because the officer had a reasonable articulable suspicion that Jesse Britain committed a traffic infraction, the stop was lawful. And after Britain threw a bag filled with methamphetamine, the scope and duration of the stop properly expanded so the officer could investigate the criminal activity.

---

[1] 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

Britain contends his counsel was ineffective for failing to challenge the search of the methamphetamine bag as an unlawful search incident to arrest. But even assuming his counsel deficiently failed to dispute a search incident to arrest theory, he fails to establish a reasonable probability that the State could not have prevailed on viable alternative theories of open view or voluntary abandonment.

Therefore, we affirm.

FACTS

One evening, Yelm Police Department Officer Christopher Davis was patrolling Green Acres Lane, a high crime residential area. On patrol, Officer Davis noticed Jesse Britain's motorcycle because there was a piece of paper covering the license plate.

Officer Davis initiated a stop of the motorcycle for a traffic infraction and asked Britain for his license and registration. Britain did not provide Officer Davis the requested documents, but he verbally identified himself.

On his way back to his patrol vehicle to conduct a records check, Officer Davis removed the paper covering Britain's motorcycle license plate, then he saw and heard Britain throw something. Officer Davis turned around and asked Britain what he had thrown. Britain responded that he threw a knife.

Concerned for his safety, Officer Davis handcuffed Britain, called other officers, frisked him, and placed him in his patrol vehicle. After the other officers arrived, Officer Davis investigated the object Britain had thrown. Fifteen

feet from the road, he found a large open Crown Royal bag with white crystals in view. Officer Davis conducted a records check and discovered that Britain's license was suspended and that he was only permitted to drive vehicles with an ignition interlock device. The motorcycle lacked any interlock device. Officer Davis arrested Britain. The officer then searched the bag and found just under a pound of methamphetamine, small "baggies," and a digital scale.

Britain was charged with possession of methamphetamine with intent to deliver, operating a motor vehicle without an ignition interlock device, and driving with a suspended license. Britain filed a motion to suppress, which the trial court denied. The court conducted a stipulated bench trial.

Britain appeals.

## ANALYSIS

### I. Traffic Stop

Britain argues that Officer Davis's traffic stop violated article I, section 7 of the Washington Constitution.

Challenged findings of fact entered after a suppression hearing that are supported by substantial evidence are binding, and unchallenged findings are verities on appeal.[2] "Our review is limited to determining whether substantial evidence supports the challenged findings of fact and, in turn, if the supported findings and unchallenged findings support the court's conclusions of law."[3] A

---

[2] State v. O'Neil, 148 Wn.2d 564, 571, 62 P.3d 489 (2003).

[3] State v. Coleman, 6 Wn. App. 2d 507, 516, 431 P.3d 514 (2018).

finding of fact is supported by substantial evidence when the record shows sufficient facts to persuade a fair-minded person of the truth of the finding.[4] We review conclusions of law de novo.[5]

Article I, section 7 of the Washington Constitution "protects the 'private affairs' of each person from disturbance imposed without 'authority of law.'"[6] A lawful Terry stop is "'limited in scope and duration to fulfilling the investigative purpose of the stop.'"[7] An officer's actions will be viewed under the totality of the circumstances to determine if the Terry stop was reasonable in scope and duration.[8] Warrantless traffic stops are allowed under the Washington Constitution, "but only if based upon at least a reasonable articulable suspicion of either criminal activity or a traffic infraction."[9]

A reasonable articulable suspicion exists where an officer's suspicion is "based on specific [and] objective facts."[10] "But a police officer cannot and

---

[4] State v. Hill, 123 Wn.2d 641, 644, 870 P.2d 313 (1994).

[5] State v. Homan, 181 Wn.2d 102, 106, 330 P.3d 182 (2014) (citing State v. Gatewood, 163 Wn.2d 534, 539, 182 P.3d 426 (2008)).

[6] State v. Arreola, 176 Wn.2d 284, 291, 290 P.3d 983 (2012) (quoting WASH. CONST. art. I, § 7).

[7] State v. Lee, 7 Wn. App. 2d 692, 702, 435 P.3d 847, review denied, 194 Wn.2d 1002, 451 P.3d 323 (2019) (quoting State v. Acrey, 148 Wn.2d 738, 747, 64 P.3d 594 (2003)).

[8] Id. (quoting State v. Flores, 186 Wn.2d 506, 525 n.8, 379 P.3d 104 (2016)).

[9] Arreola, 176 Wn.2d at 292-93 (citations omitted).

[10] State v. Duncan, 146 Wn.2d 166, 172, 43 P.3d 513 (2002) (citing Terry, 392 U.S. at 21).

should not be expected to simply ignore the fact that an appropriate and reasonably necessary traffic stop might also advance a related and more important police investigation."[11]

The only finding of fact challenged by Britain is finding of fact 7, that "Officer Davis initiated the traffic stop solely due to the obstructed license plate on the motorcycle. . . . [T]here was no other reason Officer Davis pulled Mr. Britain over."[12]

Officer Davis testified that he noticed Britain's motorcycle because there was something covering the license plate. He testified that "it was not clearly a license plate, [there was a] piece of paper" covering it.[13] He further testified that as he drove closer to the motorcycle, he was still unable to read the license plate. And Officer Davis testified that he "decided to pull the vehicle over for the obstructed license plate."[14] Substantial evidence supports finding of fact 7. And finding of fact 7 supports conclusion of law 2 that Britain was stopped only for violating RCW 46.16A.200.

Britain challenges conclusion of law 3, that "the initial traffic stop . . . was supported by a reasonable and articulable suspicion."[15]

---

[11] Arreola, 176 Wn.2d at 299.

[12] Clerk's Papers (CP) at 34.

[13] Report of Proceedings (RP) (Jan. 7, 2019) at 15.

[14] Id. at 16.

[15] CP at 36.

Officer Davis testified that when he was behind Britain's motorcycle, he "didn't know" what was covering Britain's license plate because the "paper was folded behind" and it "was unable to be read from a distance [Officer Davis] was at."[16] Because Officer Davis was unable to read Britain's license plate, he had a reasonable articulable suspicion that Britain committed a traffic infraction based on specific and objective facts.

Britain challenges conclusion of law 6, that "the scope and length of the initial stop to investigate the license plate issue were lawful [and] Officer Davis' detention of Britain after throwing the object . . . justified extension of the duration of the detention and . . . the scope of the officer's investigation."[17]

Officer Davis initiated a stop because Britain committed a traffic infraction. After collecting Britain's information, Officer Davis inspected the paper covering Britain's license plate. He then "saw Britain make a very quick, subtle movement to his right."[18] It is undisputed that the officer "observed Mr. Britain make a throwing motion and heard a loud thud of something hitting a fence in the immediate area of the traffic stop."[19] Britain told Officer Davis he threw a knife. Officer Davis was concerned for his safety. He testified that he "didn't know if [Britain] had firearms on him or any more weapons or knives."[20]

---

[16] RP (Jan. 7, 2019) at 15, 24.

[17] CP at 37.

[18] RP (Jan. 7, 2019) at 25.

[19] CP at 35 (finding of fact 10).

[20] RP (Jan. 7, 2019) at 28.

Because Officer Davis's lawful traffic stop led to a reasonable investigation of further possible criminal activity based on Britain's conduct, the scope of the initial stop was properly expanded.

Britain argues that Officer Davis initiated the traffic stop solely to investigate the validity of his trip permit. But the record does not support Britain's assertion. As discussed, the stop was made because the license plate was obstructed. Because Britain fails to offer compelling evidence to support his contention, we reject his argument.

Finally, Britain contends that, contrary to the trial court's conclusion, Officer Davis' traffic stop was a pretextual stop in violation of article I, section 7 of the Washington Constitution. In a pretextual traffic stop, an officer "has not properly determined that the stop is reasonably necessary . . . to address [the] traffic infractions for which the officer has a reasonable articulable suspicion; instead, the traffic stop is desired because of some other reason . . . such as a mere hunch regarding other criminal activity."[21] A traffic stop is not unconstitutionally pretextual if the "investigation of either criminal activity or a traffic infraction . . . for which the officer has a reasonable articulable suspicion, is an actual, conscious, and [an] independent cause of the traffic stop."[22]

---

[21] Arreola, 176 Wn.2d at 295-96.
[22] Id. at 297.

7

Here, Officer Davis testified that he patrolled Green Acres Lane because it was a "high crime area."[23] Officer Davis did not know or recognize Britain. He also testified that the sole reason he stopped Britain's motorcycle was for violating the license plate statute. Because Officer Davis remained "conscious" of the "high crime area" he was patrolling but stopped Britain for a traffic infraction, Officer Davis's stop was not pretextual.

II. Ineffective Assistance of Counsel

Britain contends that the search of the methamphetamine bag was an unlawful search incident to arrest, so defense counsel was ineffective for not presenting this argument at the hearing on his motion to suppress.

We review a claim of ineffective assistance of counsel de novo.[24] To succeed on a claim of ineffective assistance of counsel, a defendant must prove that his counsel's performance was deficient and prejudiced his case.[25] If defense counsel's decisions "can be characterized as legitimate trial strategy or tactics, performance is not deficient."[26] Prejudice requires a showing of a reasonable probability that the outcome would have been different but for the deficient performance.[27] We "should not hesitate to explore alternative theories

---

[23] RP (Jan. 7, 2019) at 10.

[24] State v. Sutherby, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

[25] State v. Thomas, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987) (quoting Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).

[26] State v. Kyllo, 166 Wn.2d 856, 863, 215 P.3d 177 (2009).

[27] Id. at 862.

8

to support a trial court's decision,"[28] and where an alternative theory exists, a defendant has no basis for a claim of ineffective assistance of counsel.[29]

Britain fails to establish deficient performance. The defense's motion to suppress, the State's response, the oral argument, and the court's oral opinion were all focused on whether there was a valid stop and whether there was a pretext for the stop. It was only in written conclusion of law 7 that the court concluded Britain's arrest was valid and the search of the contents of the Crown Royal bag was a lawful search incident to arrest. The court separately concluded that Britain's claim that the object he threw was a knife justified the expansion of the officer's investigation, and that investigation led to the discovery of the suspected methamphetamine bag. A defense counsel's determination to focus a motion to suppress on one particular search and seizure issue can be a legitimate tactical decision.[30] Britain does not establish it was deficient performance to focus the motion to suppress on the validity of the stop and whether the stop was a pretext.

And even if the facts here might not support the time of arrest rule, authorizing seizure of objects in actual possession of the defendant "at or

---

[28] State v. Burgess, 43 Wn. App. 253, 261, 716 P.2d 948 (1986).

[29] See State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995) ("The burden is on a defendant alleging ineffective assistance of counsel to show deficient representation based on the record established in the proceedings below.").

[30] Id. at 336-37.

immediately preceding the time of arrest,"[31] we should consider alternative theories. If Britain had challenged the lawfulness of any search incident to arrest, the State would have had the opportunity to present alternative theories. In order to establish prejudice, Britain must show a reasonable probability that those alternatives would not have been successful.

One of the exceptions to the warrant requirement is voluntarily abandoned property. "[W]here a defendant abandoned property and that property was subsequently searched, the defendant may assert a constitutionally protected privacy interest only upon a showing that he or she involuntarily abandoned the property in response to illegal police conduct."[32] Tossing a package containing drugs into a bush with an officer nearby is a form of voluntary abandonment.[33]

Another exception to the warrant requirement is the open view doctrine. "Under the 'open view' doctrine . . . 'it is fair to say that when a law enforcement officer is able to detect something by utilization of one or more of his senses while lawfully present at the vantage point where those senses are used, that detection is not a search.'"[34] The object "under observation" is not subject to

---

[31] State v. Brock, 184 Wn.2d 148, 154-55, 355 P.3d 1118 (2015) (citing State v. Byrd, 178 Wn.2d 611, 616, 310 P.3d 793 (2013)).

[32] State v. Reynolds, 144 Wn.2d 282, 288, 27 P.3d 200 (2001) (emphasis omitted).

[33] State v. Young, 86 Wn. App. 194, 200-01, 935 P.2d 1372 (1997), affirmed, 135 Wn.2d 498 (1998).

[34] State v. Rose, 128 Wn.2d 388, 392, 909 P.2d 280 (1996) (quoting State v. Young, 123 Wn.2d 173, 182, 867 P.2d 593 (1994)).

any reasonable expectation of privacy,  and thus, if the object is not in a constitutionally protected area, a subsequent search of that item is constitutional.[35]

As discussed, Officer Davis lawfully stopped Britain for a traffic infraction. It is undisputed that on his way back to his patrol vehicle, he saw Britain "make a throwing motion and heard a loud thud of something hitting a fence in the immediate area of the traffic stop."[36]  Britain told Officer Davis he threw a knife. Concerned for his own safety and the safety of others, Officer Davis detained Britain.  At this point, Officer Davis's traffic stop of Britain's motorcycle expanded and permitted Officer Davis to investigate the alleged knife Britain had thrown.  After the other officers arrived, Officer Davis "went to where [he] saw the object hit the ground" and discovered the open bag of methamphetamine.[37]  Officer Davis found the methamphetamine bag against a fence approximately 15 feet from the road, not a constitutionally protected area. Officer Davis lawfully stopped Britain, and could see "the white crystal substance contained in the open bag."[38]

---

[35] Id. at 392, 401-02; see also State v. Gibson, 152 Wn. App. 945, 955-56, 219 P.3d 964 (2009).

[36] CP at 35 (finding of fact 10).

[37] RP (Jan. 7, 2019) at 29.

[38] CP at 35 (finding of fact 13).

Britain does not establish a reasonable probability that the alternative theories of voluntary abandonment or open view would fail. He does not establish the prejudice required to support his ineffective assistance theory.

Therefore, we affirm.

_____
Verellen, J.

WE CONCUR:

_____     _____
Dwyer, J.                           Leach, J.