# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

Respondent,

v.

RICKIE GEORGE MILLENDER, JR.,
a/k/a Jason Miller, Kevin George,
Kevin Millender, Rickie G. Millender,
Rickie Millender, Jr., Ricky George
Millender Jr., Ricky Millender,

Appellant.

No. 85682-1-I

DIVISION ONE

UNPUBLISHED OPINION

BIRK, J. — Rickie Millender, Jr. appeals his conviction for first degree unlawful possession of a firearm, arguing the trial court failed to enter written findings of fact and conclusions of law in violation of CrR 3.5(c) and CrR 3.6(b). While the trial court erred by not entering written findings and conclusions as required by those rules, we hold the error to be harmless and affirm.

I

The State charged Millender with first degree unlawful possession of a firearm.[1] In advance of trial, Millender filed a motion under CrR 3.6 to suppress evidence obtained after an allegedly unlawful search. When the parties appeared for trial on October 31, 2022, the court began by conducting a hearing under CrR

---

[1] Three other charges were dismissed before the matter was submitted to the jury.

3.5, on Millender's CrR 3.6 motion, and on a motion Millender filed under CrR 8.3 that is not a subject of this appeal.

A

The trial court held the CrR 3.5 hearing first. The State called police officers Jeffrey Robillard and Matthew Riche, and the defense called Millender.

Robillard, a retired police officer formerly employed by the Tacoma Police Department, testified he was on patrol duty on April 30, 2020. Then-Officer Robillard wore a Tacoma Police Department jumpsuit and rode as a passenger in a marked patrol vehicle. Officer Robillard's student officer, Arturo Campos, was driving.

While on patrol, the officers observed a vehicle being driven on a city street, and Officer Robillard noticed there was significant damage to the back of the vehicle, which made it impossible to read the rear license plate. The officers attempted to perform a traffic stop, but the driver of the vehicle did not attempt to stop, sped off, and quickly turned into an alley. Officer Campos activated the patrol vehicle's emergency lights. Officer Robillard observed the vehicle's driver and the sole occupant, whom he later identified as Millender, raise his hands and exit the vehicle while it was still moving. Officer Robillard testified he commanded Millender to stop, but Millender did not respond to those commands. Officer Robillard noticed Millender was carrying a black backpack in his hands.

Millender fled on foot, running between houses, and Robillard pursued him. Officer Robillard did not have his gun drawn, and used his shoulder radio to report someone was fleeing from a traffic stop and he was in pursuit. Millender scaled a

2

homeowner's fence and entered into the backyard. Officer Robillard waited for the owner to open the gate to the yard and continued searching for Millender. Officer Robillard found Millender crouched down near a house and shed in another yard. Officer Robillard ordered Millender to get on the ground, and Millender responded by standing up and moving towards Officer Robillard. No other officers were present with Officer Robillard at that time. Officer Robillard struck Millender and used an armbar technique to put Millender on the ground. Officer Robillard testified that Millender said, "Don't kill me." Millender was handcuffed while behind the shed and house. At some point, Officer Robillard told Millender he was under arrest and was taking him to jail, but did not remember when. The backpack was not with Millender, and after detaining and escorting Millender back to his patrol car, Officer Robillard advised other officers that he had observed Millender previously carrying a backpack.

Officer Robillard testified Millender made several pre-Miranda[2] statements, but could not remember what encouraged him to make them. Millender told Officer Robillard "that he had the gun for his protection and that he was going to jail," "I never should have run," and "when I saw the lights come on, I was like 'oh, fuck.' "

Officer Robillard testified he typically would advise a detained individual about their rights by reading them either from a police advisement of rights form or a card Robillard carried in his pocket. The card is the same as the police advisement of rights form but "shrunken down and laminated." Officer Robillard read Millender his Miranda rights when Millender was handcuffed in his patrol car,

---

[2] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

and Officer Robillard put Millender's "exact answers to my questions" on the bottom of the document. When asked if Millender understood each of the rights explained by Officer Robillard as read from the form, Millender replied, "Yes, sir." Millender gave the same response when asked if he voluntarily wished to answer any questions now.

Officer Robillard testified that after he advised Millender of his Miranda rights, Millender admitted that he "knew he had a suspended license," "the gun apparently in the backpack was his," and "he had had it for ten years for protection as he had been shot in the neck previously" but "never fired it." Millender also admitted that "he shouldn't have run and that he was trying to avoid being seen by the police."

Officer Robillard testified that Millender did not appear to be under the influence of any drugs or alcohol, have any problems communicating with Officer Robillard, or have any difficulty speaking English. While Officer Robillard spoke with him, Millender did not request an attorney, invoke his rights, or appear to be confused about waiving his rights. Officer Robillard testified that neither he nor anyone else made threats or promises to Millender to get him to answer any questions. Officer Robillard testified he saw the missing backpack after other police officers located it.

On cross-examination, defense counsel noted that according to the "CAD [computer aided dispatch] report," Officer Robillard called out to report the chase at "9:30," Millender was detained at about "9:37," but Millender was not read his Miranda rights until "9:53." Defense counsel asked, "Why would that be?" Officer

4

Robillard said, "There were lots of things going on. I had to escort him back to the car. The backpack turned up. I had to examine the contents of the backpack." In the backpack, officers found a 9 millimeter semi-automatic firearm and a shoulder holster that contained a loaded magazine. The backpack also contained an envelope with Millender's name and "Department of Corrections paperwork." Officer Robillard stated that Millender made no complaints at that time about Officer Robillard's treatment. When asked during cross-examination, Officer Robillard denied striking Millender after handcuffing him, and stated that Millender said he soiled himself. When asked whether he made fun of Millender for soiling himself, Officer Robillard testified, "No, I don't think I did." When asked whether it was normal police procedure to "laugh at a client," Robillard testified he "did not laugh at the client," but also did not know if he laughed at that time.

Riche worked as a Tacoma Police Department detective at the time of the hearing. On April 30, 2020, then-Officer Riche was on duty as a patrol officer at 9:30 a.m. On that day, he wore a patrol uniform in a marked patrol vehicle. After reviewing surveillance footage and retrieving the backpack, Officer Riche returned to Millender in Robillard's patrol car. Officer Riche heard Millender say, " 'I'm going to jail. I got a gun for protection. I was shot in the neck,' " and "the gun was not sold." On cross-examination, Officer Riche testified he did not remember whether he was present when Millender was read his Miranda rights.

Millender testified that when Officer Robillard approached him while he was hiding, Officer Robillard said only "get down" when Millender was already on the ground. Officer Robillard then handcuffed Millender from behind and placed "his knee in the back of my neck and stuff, and that's how he picked me up after he cuffed me." Officer Robillard struck Millender in his face with his fist "[a]bout two, three times." Millender kept saying, " 'Please don't kill me.' " Millender stated he was scared for his life, because "lately I've been having a lot of reports of police killing people," and he ran because he did not have a license and did not want to go to jail. The location of the traffic stop and arrest made Millender nervous because there were no witnesses in the area, just Officer Robillard and Millender.

Millender testified he soiled himself after Robillard handcuffed him and that Robillard said, " 'You stink.' " Millender testified Officer Robillard made "a lot of jokes" such as telling Officer Riche that Millender " 'crapped his pants' " and "they all laughed and then they kept talking about it over and over again."

Millender denied making statements while outside the patrol car. Millender testified he was never advised of his Miranda rights and was never told he could answer or not answer questions. Millender did not sign "any more documents" with Officer Robillard. Millender denied that the signature on the advisement of rights was his and did not recognize it as anyone else's signature. Millender also denied making the following statements: "yes, sir," " 'I'm going to jail,' " " 'the gun is for protection because I was shot in the neck,' " and "it's not stolen." Millender never told Officer Robillard he was trying to avoid the police or possessed a gun.

6

On cross-examination, Millender denied having a backpack. Millender admitted that he had had more than one contact with law enforcement in his life, had received Miranda warnings in the past, was aware of those rights, speaks and understands English, and understands the consequences of making statements to law enforcement.

After hearing argument by the parties, the trial court made its CrR 3.5 ruling orally on the record. The court found none of Millender's prior convictions to be "particularly probative of credibility." Millender's prior contacts with law enforcement and knowledge of police procedures may have had a bearing on "how he may have acted or what he may have remembered; I don't know."

The court found Officer Robillard's testimony to be "very specific" and "very detailed." Officer Robillard "freely admitted when he didn't remember things, even though it may have been to the State's advantage for him to have remembered them." For example, whether or not the signature on the Miranda form is Millender's or not. The court concluded Officer Robillard was credible overall.

The court found Millender "credible for certainly part of his testimony." The court attributed the differences between Millender's and Officer Robillard's testimony to "an honest disagreement over what happened." The court said, "[T]he Miranda warnings may not be what stands out in [Millender's] memory from this encounter" "if he's in fear for his life." The court found not credible Millender's "absolute denial of knowing anything about the backpack or having possessed the backpack." That absolute denial led the court to believe Officer Robillard more credible "at least on all material points where his testimony differed from Mr.

7

Millender's," "so this Court will adopt Officer Robillard's testimony as the Court's findings of fact."

The court found Millender's pre-Miranda statements were not in response to interrogation. The court found Millender then received Miranda warnings and verbally replied that he was willing to waive those rights without being subjected to threats, promises, or under the influence of anything. Millender did not express any confusion regarding his rights. Taken together, the court concluded Millender "made a knowing, voluntary, and intelligent waiver of his Miranda warnings and made the statements voluntarily. So the statements are admissible."

B

The trial court then held the CrR 3.6 hearing. The State called Police Officers Riche and Zachary Spangler.

Officer Riche testified he conducted a search for a backpack after he was called to the scene. Officer Riche first searched the backyard of the residence where Officer Robillard found and arrested Millender. Officer Riche's initial search was unsuccessful, so he climbed up the ladder of an RV (recreational vehicle) or trailer in the same backyard to "get an overview of the entire yard." Officer Riche found the backpack on top of the RV, and passed it down to Officer Spangler. Officer Riche testified Officer Spangler advised him that there was a firearm in the backpack.

On cross-examination, Officer Riche could not describe the backpack, believed it to be Millender's backpack because of its proximity to where Millender

was found, and admitted "it was potentially anybody's." Officer Riche did not look in the backpack.

Officer Spangler was on duty on April 30, 2020 at approximately 9:30 a.m. and responded to the incident involving Millender. After arriving at the scene, Officer Robillard advised Officer Spangler that there was a backpack in the area and asked him and Officer Riche to look for it. Officer Spangler testified that after they canvassed the backyards of some homes, Officer Riche mounted an RV in one of the backyards and found the backpack on top. Officer Riche handed the backpack down to Officer Spangler, who saw the main "compartment was unzipped." Officer Spangler could see inside and found a handgun and holster. He did not see anything else in the backpack.

On cross-examination, Officer Spangler admitted that when handed down the backpack, he did not know who it belonged to and "in that way it was private property." Officer Spangler denied removing anything from the backpack or taking pictures of the backpack. He denied that anything fell out of the backpack.

The State argued the backpack should not be suppressed because Millender abandoned it and therefore relinquished any protected privacy interest in it, the search of the backpack is supported by the plain view doctrine, and the backpack was discovered as part of a search incident to arrest. The trial court rejected admitting the backpack evidence under the plain view doctrine or search incident to arrest warrant exception. But the court found the testimony of Officer Spangler to be credible and that "whatever privacy interest Mr. Millender had in that backpack was relinquished when he decided to abandon it in a place where

he had no expectation of privacy." The court denied Millender's motion to suppress.

C

At trial, Officer Robillard, Officer Riche, and Officer Spangler testified consistent with their statements summarized above. Officer Robillard also testified that in addition to a handgun, the black backpack contained a shoulder holster, a loaded gun magazine, and an envelope addressed to Millender from the Department of Corrections. Tacoma Police Department Detective Jeffrey Maahs testified he test fired the handgun and concluded it was operable. Millender stipulated that he had a prior conviction that rendered him ineligible to possess a firearm. The jury found Millender guilty of first degree unlawful possession of a firearm. The court imposed a standard range sentence.

II

Millender first argues on appeal the trial court erred by failing to enter written findings of fact and conclusion of law as required under CrR 3.5(c) and contends a remand is appropriate for the entry of written findings and conclusions. We disagree.

The rule provides the court must state in writing "(1) the undisputed facts; (2) the disputed facts; (3) conclusions as to the disputed facts; and (4) conclusion as to whether the statement is admissible and the reasons therefor." CrR 3.5(c). "The trial court's failure to comply is error, but such error is harmless if the court's oral findings are sufficient for appellate review." State v. France, 121 Wn. App. 394, 401, 88 P.3d 1003 (2004). In State v. Smith, "Although the deputy prosecuting

attorney told the trial court that written findings of fact and conclusions of law from the suppression hearing would be prepared, no such findings [were] prepared or filed." 76 Wn. App. 9, 13, 882 P.2d 190 (1994). We held, "A court's failure to enter written findings of fact and conclusions of law following a suppression hearing"—in that case as required by CrR 3.6—"is harmless error if the court's oral opinion and the record of the hearing are 'so clear and comprehensive that written findings would be a mere formality.' " Id. at 16 (quoting State v. Smith, 68 Wn. App. 201, 208, 842 P.2d 494 (1992)). In Smith, the trial court's oral ruling made it clear "what its findings would have been had it formally entered findings," such that the "absence of written findings did not prejudice [the defendant] and [did] not impede review." 76 Wn. App. at 17.

Here, the trial court erred by not entering written findings of fact and conclusions of law following the CrR 3.5 hearing. However, this error is harmless. The court unambiguously adopted Officer Robillard's testimony as the findings of fact. The court admitted Millender's pre-Miranda statements and post-Miranda statements, because he made a "knowing, voluntary, and intelligent waiver of his Miranda warnings and made the statements voluntarily. So the statements are admissible." The record does not show that Millender has been prejudiced by the lack of additional written findings mirroring this analysis. These findings, along with Officer Robillard's detailed testimony, are sufficient to permit appellate review, they support the trial court's ruling, and a remand to enter written findings and conclusions under CrR 3.5(c) is unnecessary.

III

Millender argues the trial court erred by failing to enter written findings of fact and conclusions of law as required under CrR 3.6(b) and contends a remand is required for the entry of written findings and conclusions. We disagree.

Following an evidentiary hearing on motions to suppress physical, oral, or identification evidence, the trial court must enter written findings of fact and conclusions of law. CrR 3.6(a), (b). The failure to enter findings of fact and conclusions of law is error, but such error is harmless if the trial court's oral findings are sufficient to permit appellate review. State v. Richards, 11 Wn. App. 2d 84, 87, 450 P.3d 1238 (2019).

The trial court erred by not entering written findings of fact and conclusions of law following the CrR 3.6 hearing, but this error is harmless. The court found Officer Spangler credible. The trial court also found the particular circumstances here to be analogous to those in State v. Reynolds, 144 Wn.2d 282, 27 P.3d 200 (2001) and State v. Young, 86 Wn. App. 194, 200, 935 P.2d 1372 (1997).

In Reynolds, a law enforcement officer conducted a traffic stop and while speaking to the driver, noticed a green coat lying on the passenger side floorboard in front of the defendant, who was the vehicle's only passenger. 144 Wn.2d at 284. The officer later arrested the driver and asked the defendant to remain in the vehicle. Id. The officer then came back to the defendant and asked him to step outside so he could search the vehicle. Id. The officer noticed the coat was no longer on the floorboard but was lying on the ground, stuffed underneath the passenger side of the vehicle. Id. at 284-85. The defendant claimed the coat was

not his and denied placing it under the vehicle. Id. After searching the coat, the officer found a white powdery substance, which yielded a positive field test for the presence of a controlled substance, and drug paraphernalia. Id. The trial court denied the defendant's motion to suppress, and the Reynolds court affirmed, rejecting the defendant's contention that he involuntarily abandoned the coat in response to alleged unlawful police conduct. Id. at 286, 291. The court held, "Needing neither a warrant nor probable cause, law enforcement officers may retrieve and search voluntarily abandoned property without implicating an individual's rights under the Fourth Amendment or under article I, section 7 of our state constitution." Id. at 287.

In Young, a law enforcement officer made social contact with the defendant in an area known for high drug activity. 86 Wn. App. at 197. As the officer drove away, he requested a criminal records check and discovered that the defendant had an extensive criminal background involving drugs. Id. The officer turned around and activated the car spotlight, illuminating the defendant and the surrounding area. Id. The defendant walked rapidly toward some trees, tossed " 'an apparent package or something' " behind a tree, walked quickly away from the trees, and then resumed a normal walk down the sidewalk. Id. The officer stopped the defendant, detained him, and retrieved the object, which was a charred can containing a substance the officer believed to be crack cocaine. Id. at 197-98. The trial court granted the defendant's motion to suppress all evidence gained from the arrest, ruling the defendant's seizure occurred at the time the officer flashed his spotlight. Id. at 198. The Young court reversed, holding the

officer properly retrieved the charred can as voluntarily abandoned property and the trial court erred in excluding the evidence.  Id. at 200-01, 203.  The court said, "Discarded property is voluntarily abandoned unless there is unlawful police conduct, and a causal nexus exists between that conduct and the abandonment." Id. at 201 (citing State v. Whitaker, 58 Wn. App. 851, 856, 795 P.2d 182 (1990)).[3]

Millender contends the trial court's reliance on Reynolds and Young was insufficient because the court failed to discuss the facts of this case, did not resolve any disputed facts, and did not explain how the facts of this case established abandonment.  Unlike the CrR 3.5 hearing, Millender did not present evidence conflicting with Officer Spangler's testimony.  While Officer Spangler acknowledged on cross-examination that the backpack may have belonged to a private party, the trial court's finding that Millender abandoned the backpack and therefore relinquished any privacy interest in the backpack resolved that issue in the State's favor.  By adopting Officer Robillard's testimony as findings of fact, the trial court necessarily found that Millender possessed a backpack when Officer Robillard watched Millender flee his car on foot, Officer Robillard later noticed the backpack was missing, and Officer Riche and Office Spangler found the backpack in close proximity to where Officer Robillard detained Millender.  These findings closely resemble the factual circumstances described in Reynolds and Young. Based on the foregoing, the trial court concluded Millender abandoned the

---

[3] This quotation from Young reflects, as Reynolds also held, that the principle supporting warrantless retrieval and search of voluntarily abandoned property is limited by the corollary that "property cannot be deemed voluntarily abandoned (and thus subject to search) if a person abandons it because of unlawful police conduct."  Reynolds, 144 Wn.2d at 287.

backpack. Despite the trial court's error in not entering written findings and conclusions, its oral ruling is sufficient to permit appellate review and a remand is unnecessary.

Affirmed.

_____
Birk, J.

WE CONCUR:

_____
Díaz, J.

_____
Brummer, J